UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANA O'NEAL,

    Plaintiff,

v.

52ND DISTRICT COURT, JUDGE
JOSEPH G. FABRIZIO, an employee sued
in his personal and official capacity,

    Defendants.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com
Grant@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out of this transaction or occurrence alleged in the Complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff DANA O'NEAL, by and through her attorneys, HURWITZ LAW PLLC, brings this action against Defendants 52nd District Court and Judge Joseph G. Fabrizio, and hereby alleges as follows:

## INTRODUCTION

1. Plaintiff Dana O'Neal ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 (First Amendment Retaliation) and Michigan's Whistleblower Protection Act ("WPA"), MCL § 15.362 *et seq.*, seeking equitable, declaratory, and monetary damages against Defendant 52nd District Court ("Defendant").

2. Plaintiff was terminated on December 10, 2021 after filing a complaint with the Judicial Tenure Committee ("JTC") at the recommendation of the State Court Administrative Office ("SCAO") and participating in the subsequent investigation.

3. Plaintiff's complaint focused on a hostile work environment created by District Court Judge Kirsten Hartig. Plaintiff's speech was regarding a matter of public concern, and her involvement with the SCAO and JTC investigation constitutes protected activity.

4. Her sudden termination without justification after a career of distinguished public service for over 25 years was proximately caused by her involvement in the investigation.

5. Accordingly, Defendant retaliated against Plaintiff when it unceremoniously terminated her employment in contravention of the First Amendment to the United States Constitution and Michigan's WPA.

## PARTIES AND JURISDICTION

6. Plaintiff is a resident of West Bloomfield, Michigan, which is in Oakland County.

7. Defendant is a governmental body established by the Michigan Legislature and is in Oakland County.

8. Defendant Judge Joseph G. Fabrizio is the Chief Judge of Defendant 52nd District Court.

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims).

10. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claim.

11. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the Defendant's principal place of business is located and where the events giving rise to Plaintiff's claims took place.

12. Plaintiff sues Defendant Fabrizio in both his individual and official capacity.

13. At all times material to this Complaint, Defendant Fabrizio acted under color of law, meaning under color of the statutes, codes, ordinances,

regulations, policies, customs and usages of the State of Michigan and/or 52nd District Court.

## FACTUAL ALLEGATIONS

14. Plaintiff began her career in public service in 1992 as an intern at the Oakland County 52-2 District Court in Clarkston, Michigan, where she was quickly promoted as a contractual worker charged with overseeing the day-to-day operations of the Probation Department and managing large caseloads.

15. Plaintiff was hired by the Oakland County Community Corrections Department in 1996 and tasked with high level administrative duties.

16. Plaintiff was soon promoted and responsible for creating new programs within the Department.

17. Plaintiff was promoted to a supervisor in 2002 and flourished in the role based on her ability to manage and direct staff in multiple locations. She earned local, state, and national-level recognition for her accomplishments.

18. In April 2018, Plaintiff was hired as the Court Administrator at the Oakland County 52-4 District Court.

19. During the hiring process, Plaintiff was vetted by Chief Judge Joseph Fabrizio and two Court Administrators.

20. Upon information and belief, during the eight years prior to Plaintiff's arrival, former Court Administrators working at the Oakland County 52-4 District

Court abandoned the position due to Judge Kirsten Hartig's mistreatment of Court Administrators.

21. One of Plaintiff's predecessors resigned within six weeks of Judge Hartig assuming the bench.

22. Another predecessor retired after alleging a hostile work environment, which triggered an investigation by Human Resources in 2016.

23. Upon information and belief, the investigation resulted in a finding that Human Resources possessed no control over Judge Hartig's behavior and required staff to take a mandatory training entitled "How to Deal with Difficult People."

24. During Plaintiff's tenure at the Oakland County 52-4 District Court, she led efforts to recruit and retain staff for the County, improved operations and building securities, increased staff morale, remedied labor deficiencies, solved a black mold issue, and implemented COVID-19 safety policies and procedures.

25. However, Plaintiff witnessed Judge Hartig mistreating employees and members of the public from the outset of her employment.

26. Judge Hartig required Plaintiff to attend daily closed-door meetings, whereupon she berated Plaintiff and claimed that she was "above" her.

27. Additionally, Judge Hartig exerted inappropriate control over court administration, thereby usurping Plaintiff's supposedly autonomous role.

28. Judge Hartig demeaned and belittled others, which is demonstrated by Plaintiff receiving multiple complaints from court appointed counsel. Plaintiff took statements and watched video recordings of Judge Hartig's behavior.

29. Plaintiff complained about Judge Hartig's conduct to Chief Judge Fabrizio and Judge Maureen McGinnis.

30. Plaintiff contemporaneously maintained records and notes of Judge Hartig's conduct, which Plaintiff kept in her office.

31. Approximately one month into her employment, Plaintiff was hospitalized with severe diverticulitis for three days—a condition she never previously suffered.

32. Plaintiff continued to endure mistreatment that exacerbated her mental and physical health contributing to multiple stress-related medical conditions including diverticulitis, hair loss, weight loss, and the diagnosis of Type 2 diabetes.

33. Plaintiff worked through illness to avoid reprisal.

34. On or about May 22, 2018, the day Plaintiff returned to work from a medical absence, she was summoned to meet with both Judge Hartig and Judge McGinnis.

35. Judge Hartig ordered, "unless you are unconscious, you are to check in with me daily." Judge McGinnis did not interfere.

36. Judge Hartig also told Plaintiff about a new "Court Administrator Absence Policy," designed by Judge Hartig to curtail protected medical leave for employees of the 52nd District Court.

37. Plaintiff forwarded an electronic copy of the policy to Chief Judge Fabrizio and to an Oakland County 52-1 District Court Administrator, who responded, "[I]s this [expletive] for real?"

38. In August 2018, Judge Hartig hailed Plaintiff to open court to accuse her of mismanaging grant funding. A full court room watched Judge Hartig publicly humiliate Plaintiff.

39. Plaintiff reported the incident to Chief Judge Fabrizio, who escalated the matter to SCAO, including both a transcript and video recording of the August 2018 incident.

40. Chief Judge Fabrizio admonished Judge Hartig for her behavior and SCAO advised Plaintiff to keep documenting such actions.

41. For the next two years, Judge Hartig continued to interfere with the discipline and morale in Defendant's Oakland County 52-4 District Court. By March 2020, Plaintiff plead with Chief Judge Fabrizio for support by emailing him that she could no longer tolerate this treatment and provided detailed examples of Judge Hartig's behavior.

42. The examples of Judge Hartig's behavior included not only mistreatment of Plaintiff, but mistreatment of other governmental employees.

43. Chief Judge Fabrizio responded by referring Plaintiff to Human Resources, who conducted a formal investigation. Plaintiff was interviewed for three hours on these topics.

44. Human Resources concluded that a hostile work environment existed within the County and instructed Chief Judge Fabrizio to forward the findings and final report to SCAO and JTC.

45. Thereafter, the JTC launched an investigation into Judge Hartig's conduct in July 2020, which Judge Hartig was aware of.

46. Chief Judge Fabrizio directed Judge Hartig to cease all communication with Plaintiff unless it was via email or over video conference with a third-party present.

47. Plaintiff cooperated with the JTC investigation, and she emailed JTC Investigator Glenn Page periodically for updates.

48. Plaintiff was responsible for providing names and contact as well as managing the logistical details for the JTC interviews

49. In November 2020, JTC interviewed current and former County employees, local law enforcement and local attorneys.

50. Upon information and belief, the JTC investigator interviewed a minimum of 40-60 people on subjects that were more far-reaching than just the treatment of Plaintiff.

51. In or about September 2021, Mr. Page informed Plaintiff that JTC the evidence showed that Judge Hartig created a hostile work environment. A final report was elevated to Mr. Page's supervisor.

52. Upon information and belief, the JTC investigation is still ongoing.

53. In early 2021, Court Administrator Alex Black contacted Plaintiff to instruct her to stop contacting Chief Judge Fabrizio because he did not know "why or how to assist" Plaintiff.

54. Plaintiff questioned why Chief Judge Fabrizio would not contact her personally, and Ms. Black stated that Chief Judge Fabrizio did not want to "upset" Plaintiff.

55. On September 13, 2021, Plaintiff was called to a meeting with Judge McGinnis and Chief Judge Fabrizio.

56. Plaintiff was not provided any direction or information as to the reason for the meeting.

57. During the meeting, Chief Judge Fabrizio questioned why staffing levels at the Court were low, as vacant positions were not being filled and new hires decided last-minute that they no longer wanted the job. Chief Judge Fabrizio

asked if someone in the Court was contacting potential candidates to tell them "how bad it was" working for Defendant.

58. Staffing issues resulted in chronic backlogs of filings in the civil department, which Plaintiff attempted to fix by hiring new employees.

59. On December 10, 2021, Defendant abruptly terminated Plaintiff while the JTC investigation remained open.

60. Plaintiff's cooperation with the SCAO and involvement in the JTC investigation was a substantial or motivating factor in Defendant's decision to terminate her.

61. Plaintiff's protected speech bringing to light the potential or actual wrongdoings or a breach of the public trust in Defendant was a substantial or motivating factor in Defendant's decision to terminate her.

62. No justification was otherwise provided. There was no formal negative performance evaluation, corrective action, employee assistance program—all of which are customary prior to termination.

63. The purported termination reason remained a mystery while Plaintiff was escorted by law enforcement off the premises without any of her belongings.

64. Thereafter, Defendant placed some of Plaintiff's property outside of the courthouse for her to pick up, but she soon realized that her private notes detailing Judge Hartig's behavior and the investigations were missing.

## COUNT I
### *42 USC § 1983 – First Amendment Retaliation*

65. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

66. The First Amendment of the United States Constitution, as incorporated into the 14th Amendment, prevents governments from abridging an individual's freedom of speech.

67. The First Amendment also protects an individual from retaliation when she has exercised her freedom of speech.

68. The rationale for protecting a public employee's right to comment on matters of public concern is that "public employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers, operations which are of substantial concern to the public."  City of San Diego, v. Roe, 543 U.S. 77, 82, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004).

69. An employee speaking as a citizen is speaking on a matter of public concern when that speech can be fairly considered as relating to any matter of political, social, or other concern to the community.  Another consideration is whether the speech involves a subject of general interest and of value and concern to the public.  Mosholder v. Barnhardt, 679 F.3d 443, 449 (6th Cir. 2012).

70. Speech entails a matter of public concern when the speech involves issues for which information is needed to enable members of society to make

informed decisions regarding their government's operation. *Banks v. Wolfe Co. Bd. of Ed.*, 330 F.3d 888, 892 (6th Cir. 2003).

71. "Public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." Id. at 83-84.

72. "When a public employee speaks on a matter that is merely related to the employee's profession, he or she is a member of the community most likely to have an informed and definite opinion and must be permitted to speak freely absent fear of retaliation." Garvin v. Detroit Bd. of Educ., No. 298838, 2013 WL 951118, at *11 (Mich. Ct. App. Feb. 26, 2013), citing Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).

73. Plaintiff's speech was made as a citizen on a matter of public concern.

74. Bringing to light potential or actual wrongdoings or a breach of the public trust are generally matters of public concern. *Connick v. Myers*, 461 U.S. 138, 148, 103 S. Ct. 1684, 1691, 75 L. Ed. 2d 708 (1983). Moreover, "discipline and morale in the workplace are related to an agency's efficient performance of its duties[.]" *Id.*

75. An investigation launched by the JTC into Defendant's conduct and the extent and adequacy of the measures taken by public officials in response to the allegations involve matters of social concern to the community, a potential breach

of the public trust, the general public interest, and entail matters upon which information is needed to enable members of society to make informed decisions regarding the leadership and operations of elected officials, including Oakland County District Court judges.

76. Defendant punished Plaintiff for raising matters of public concern.

77. Defendant terminated Plaintiff for speaking out about how a court official mistreats members of the public.

78. Defendants' decision to terminate Plaintiff was motivated, at least in part, by Plaintiff's exercise of her First Amendment right to free speech.

79. Plaintiff's interest as a citizen in speaking on these matters was significant, as they concerned substantial matters of ethics and public safety that she was well informed of and entitled to make.

80. Plaintiff's speech had no impact on the efficiency of the Court, and therefore Defendants had no interest in curtailing this speech to promote the efficiency of the public services they performed through their employees.

81. Defendants acted with deliberate indifference to Plaintiff's presumed and actual innocence.

82. Defendants agreed to, approved, and ratified this unconstitutional conduct.

83. It would have been plainly obvious to a reasonable official that such actions or inaction would deprive or lead to the deprivation of Plaintiff's constitutional rights.

84. Defendants' actions and inaction, as set forth above, were fundamentally unfair to Plaintiff.

85. There exists no rational relationship between Plaintiff's actual conduct and the discipline imposed against her by Defendants.

86. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered emotional and physical distress, feelings of depression, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

87. As a further and direct proximate result of Defendant's retaliation, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work in the future.

## COUNT II
## VIOLATION OF MICHIGAN'S
## WHITLEBLOWER'S PROTECTION ACT

88. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

89. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the WPA, MCL § 15.361, et seq.

90. Defendant is a public body within the meaning of the WPA, MCL § 15.361, et seq.

91. MCL § 15.362 protects an employee who is "requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action." The express language of the statute does not limit that protection to investigations of a violation of law; "it does not matter whether the investigation involves a violation of law, regulation or rule." *Housey v. Macomb Cty. Prob. Ct.*, No. 309060, 2014 WL 1383347, at *1 (Mich. Ct. App. Apr. 8, 2014)

92. Plaintiff engaged in protected activity under MCL § 15.362 because she cooperated with the SCO and participated in an investigation held by the JTC.

93. Defendant retaliated against Plaintiff because of her protected activity in violation of the WPA by, inter alia, terminating her from her employment.

94. As a direct and proximate result of Defendant's violation of the WPA, Plaintiff has suffered emotional and physical distress, feelings of depression, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

95. As a further and direct proximate result of Defendant's retaliation, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dana O'Neal requests the following relief from this Court against Defendant:

a. Declare that the aforementioned practices and actions of Defendants constitute unlawful violations of 42 U.S.C. § 1983 and the WPA;

b. Award Plaintiff compensatory, economic, and noneconomic damages in whatever amount Plaintiff is found to be entitled, including all lost wages and benefits, past and future, in whatever amount she is found to be entitled;

c. Award Plaintiff compensatory damages for monetary and nonmonetary loss in whatever amount she is found to be entitled;

d. Award Plaintiff exemplary and punitive damages in whatever amount she is found to be entitled;

e. Award Plaintiff reasonable attorney's fees, costs, and interests; and

f. Award such other relief as this Court deems just and proper.

Respectfully Submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*

                                            Noah S. Hurwitz (P74063)
HURWTIZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com

Dated: March 3, 2022

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DANA O'NEAL,

      Plaintiff,                                              Case No.

v.                                                                              Hon.

52ND DISTRICT COURT, JUDGE
JOSEPH G. FABRIZIO, an employee sued
in his personal and official capacity,

      Defendants.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com
Grant@hurwitzlaw.com

---

## **JURY DEMAND**

NOW COMES Plaintiff Dana O'Neal, by and through her attorneys, HURWITZ LAW PLLC, and hereby demands a trial by jury of the issues in the above-captioned cause of action.

                                                /s/ *Noah S. Hurwitz*

                                                Noah S. Hurwitz (P74063)
                                                HURWITZ LAW PLLC
                                                *Attorneys for Plaintiff*

Dated: March 3, 2022