## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DANA O'NEAL,

       Plaintiff,                    Case No. 22-cv-10470

v.                                   Hon. Victoria A. Roberts

52ND DISTRICT COURT and
JUDGE JOSEPH G. FABRIZIO,
in his personal and official capacity,

       Defendants.

_____/

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Aaron C. Thomas (P55114) |
| Grant M. Vlahopoulos (P85633) | Oakland County Deputy Corporation Counsel |
| Hurwitz Law PLLC | Nicole B. Tabin (P73685) |
| Attorneys for Plaintiff | Sr. Asst. Oakland County Corporation Counsel |
| 617 Detroit St. STE 125 | Attorneys for Defendants |
| Ann Arbor, MI 48104 | 1200 N. Telegraph Road, Dept. 419 |
| (844) 487-9489 | Pontiac, MI 48341-0419 |
| Noah@hurwitzlaw.com | (248) 975-9616 |
| Grant@hurwitzlaw.com | (248) 858-1475 |
| | thomasa@oakgov.com |
| | tabinn@oakgov.com |

_____/

## **DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Defendants, 52nd District Court and Judge Fabrizio, move this Court to dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). In support of their motion, Defendants rely upon their Brief in Support of Defendants' Motion to Dismiss Complaint.

Pursuant to Local Rule 7.1, counsel for Defendants contacted counsel for Plaintiff, via electronic mail, on May 2, 2022 to seek concurrence in the relief sought through this motion, but concurrence in the relief requested in this Motion was not granted.

Respectfully submitted,

OAKLAND COUNTY CORPORATION COUNSEL

*/s/Nicole B. Tabin*
Nicole B. Tabin (P73685)
Sr. Asst. Oakland County Corporation Counsel
Attorney for Defendants
1200 N. Telegraph Road, Dept. 419
Pontiac, MI 48341-0419

Dated: May 9, 2022

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DANA O'NEAL,

        Plaintiff,                            Case No. 22-cv-10470

v.                                          Hon. Victoria A. Roberts

52ND DISTRICT COURT and
JUDGE JOSEPH G. FABRIZIO,
in his personal and official capacity,

        Defendants.

_____/

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Aaron C. Thomas (P55114) |
| Grant M. Vlahopoulos (P85633) | Oakland County Deputy Corporation Counsel |
| Hurwitz Law PLLC | Nicole B. Tabin (P73685) |
| Attorneys for Plaintiff | Sr. Asst. Oakland County Corporation Counsel |
| 617 Detroit St. STE 125 | Attorneys for Defendants |
| Ann Arbor, MI 48104 | 1200 N. Telegraph Road, Dept. 419 |
| (844) 487-9489 | Pontiac, MI 48341-0419 |
| Noah@hurwitzlaw.com | (248) 975-9616 |
| Grant@hurwitzlaw.com | (248) 858-1475 |
| | thomasa@oakgov.com |
| | tabinn@oakgov.com |

_____/

## BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS COMPLAINT

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... ii

STATEMENT OF ISSUES ....................................................................... iv

STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY ....... v

STATEMENT OF FACTS ......................................................................... 1

ARGUMENT ........................................................................................... 6

      Standard of Review .......................................................................... 6

DISCUSSION ......................................................................................... 8

I.     Count I (42 USC § 1983 - First Amendment Retaliation Claim) .................................... 8

    A. Plaintiff Did not Engage in Constitutionally Protected Conduct .............................. 8

        1. Element 1: Plaintiff spoke as a public employee -- not as a private citizen ......... 9
        2. Element 2: Plaintiff's speech was a personnel matter -- not public concern ..... 13

    B. There is no causal connection between plaintiff's termination and her speech ....... 16

II.    Count II - Violation of Michigan's Whistleblower Protection Act ............... 18

III.   Sovereign Immunity Requires the Dismissal of the 52nd District Court and the Official Capacity Claim Against Judge Fabrizio in Count I ................... 21

    CONCLUSION ................................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Albert v Mitchell*, 42 F. App'x 691, 693 (6th Cir. 2002) .......................................................15

*Albright v. Oliver*, 510 U.S. 266 (1994)...........................................................................6

*Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) .................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) ...................................................................7

*Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).........................................................8

*Basso v. Mich. Dep't of Corr.*, No. 2:08-cv-75, 2009 U.S. Dist. LEXIS 29098, at *28 (W.D. Mich. Apr. 2, 2009)........................................................................................................15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ..........................................6, 18

*Boulton v. Swanson*, 795 F.3d 526, 532 (6th Cir. 2015) ...................................................14

*Brown v Cassens Transp. Co.* 546 F.3d 347, 363 (6th Cir. 2008).......................................21

*Burgess v. Paducah Area Transit Auth.*, 387 Fed. Appx. 538, 545 (6th Cir. 2010) .............12

*Connick v. Myers*, 461 U.S. 138(1983) .............................................................. v, 13, 14

*Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986).................................16

*Cuddington v United Health Servs*, Inc, 298 Mich App 264, 275 (2012) ..............19

*Garceau v. City of Flint*, No. 12-cv-15513, 2013 U.S. Dist. LEXIS 159479, at *20 (E.D. Mich. Nov. 7, 2013) ........................................................................................................15

*Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) ...............................8, 9

*Henry v. City of Detroit*, 234 Mich. App. 405, 410 (1999) ...............................................19

*Jones v. City of Cincinnati*, 521 F.3d 555, 561-62 (6th Cir. 2008) .....................................8

*Keeling v. Coffee Cty.*, 541 F. App'x 522, 527 (6th Cir. 2013)..........................................12

*Mayhew v. Town of Smyrna*, 856 F.3d 456 (6th Cir. 2017) ............... passim

*Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690, n.55, (1978)...................22

*Pucci v. Nineteenth Dist. Court, 628 F.3d 752 (6th Cir. 2010)* .................................. passim

*Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006).......................16

*Shallal v. Catholic Social Services*, 455 Mich. 604, 610, 566 N.W.2d 571 (1997)...............18

*Trepanier v. Nat'l Amusements, Inc.*, 250 Mich. App. 578, 583, 649 N.W.2d 754 (2002) ...........................................................................................................................18

*Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) .....................16

*Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010)..................... 16, 17

*West v. GMC*, 469 Mich. 177, 186 (2003).............................................. v, 19, 20, 21

*Wood v. 36th Dist. Court*, No. 21-1313, 2022 U.S. App. LEXIS 4504 (6th Cir. Feb. 18, 2022) ...........................................................................................................................12

**Federal Statutes**

42 USC § 1983 ................................................................................ iv, 8, 22

**Federal Court Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................... passim

**State Court Rules**

MCR 8.103...................................................................................................1
MCR 8.110(C)(3).............................................................................. 1, 2, 17
MCR 8.110(C)(7)........................................................................................2
MCR 9.220...................................................................................................4
MCR 9.223 and 9.224................................................................................5
MCR 9.250, 9.251, 9.252..........................................................................5
MCR 9.261...................................................................................................5

**State Statutes**

MCL 15.362...............................................................................................18
MCL 600.8123(9)(d)...................................................................................1

**State Constitutional Provisions**

Mich. Const. Art VI, Sec. 30....................................................................4
Mich. Const. Article VI, §1 .....................................................................1

## **STATEMENT OF ISSUES**

I.     Should Count I (42 USC § 1983 - First Amendment Retaliation claim) be dismissed because (1) Plaintiff spoke as a public employee pursuant to her official duties, not a private citizen, (2) Plaintiff's speech was not of public concern, and (3) there is no causal connection between Plaintiff's termination and her speech?

       Defendants' answer: YES

II.    Should Count II (Michigan's Whistleblower Protection Act claim) be dismissed because the Complaint has not shown any causal connection between the alleged protected activity and Plaintiff's termination?

       Defendants' answer: YES

III.   Are the 52nd District Court and Judge Fabrizio in his official capacity protected by sovereign immunity under the Eleventh Amendment?

       Defendants' answer: YES

iv

## **STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY**

Fed. R. Civ. P. 12(b)(6).

*Mayhew v. Town of Smyrn*a, 856 F.3d 456 (6th Cir. 2017).

*Connick v. Myers*, 461 U.S. 138 (1983).

*West v. GMC*, 469 Mich. 177, 186 (2003).

## STATEMENT OF FACTS[1]

In April 2018, Defendant Judge Joseph Fabrizio appointed Plaintiff as Court Administrator for Defendant 52nd District Court, Division 4. (Complaint ¶18; MCR 8.110(C)(3).) The 52nd District Court is part of Michigan's "One Court of Justice" under Mich. Const. Article VI, §1. The Michigan Supreme Court, through the State Court Administrative Office (SCAO), oversees the administration of all Michigan courts, including the 52nd District Court. (MCR 8.103.)

The 52nd District Court is divided into four divisions. The fourth division, where Plaintiff was court administrator, consists of the cities of Troy and Clawson and has two judges: Judge Kirsten Hartig and Judge Maureen McGinnis. (MCL 600.8123(9)(d).)

Judge Fabrizio is a judge in the second division of the 52nd District Court, which consists of the Village of Clarkston and the townships of Springfield, Independence, Holly, Groveland, Brandon, Rose, and White Lake. He is also the chief judge for the entire 52nd District Court, and he was chief judge when he appointed Plaintiff in 2018. The duties and powers of the chief judge are set forth in MCR 8.110(C)(3)

---

[1] Facts not specifically alleged in Plaintiff's Complaint are supported by legal citation or public records and arise directly from the facts alleged by Plaintiff. *See,* Standard of Review in the Argument Section of this brief for legal authority permitting the use of such records for a motion to dismiss.

and include the supervision, hiring, and firing of court personnel. The chief judge may delegate administrative duties to a trial court administrator. (MCR 8.110(C)(7).)

The court administrator position is an at-will, appointed position that serves at the pleasure of the chief judge. (**Exhibit A**: Job Description; MCR 8.110(C)(3).) In her role as court administrator, Plaintiff was responsible for:

> The administrative and non-judicial functions of [division four] of the 52nd District Court involving the management of case processing, personnel, budget, juries, facilities, security and other non-judicial functions. […] Reviews and implements new court rules, statutes, administrative orders, and laws affecting case processing, technical and personnel matters.

(**Exhibit A**: Job Description.)

The essential job functions of the court administrator include:

- Establishes effective management policies, procedures, and program review techniques to ensure the effective administration [of the court].
- Provides and prepares information [to the public] regarding court related issues.
- Reviews and interprets [the law] to ensure court operational compliance.
- Prepares and/or composes a variety of reports and other documents related to the court operation for the…State legal authorities ensuring accuracy and compliance with legislation.
- Handles the more difficult and complex complaints and questions concerning court activities.

(**Exhibit A**: Job Description).

2

Plaintiff had no prior experience serving as a court administrator. Before her appointment, she had a successful twenty-two-year career working for Oakland County in its Community Corrections Department from 1996-2018 and a four-year stint from 1992-1996 as an intern/contractual worker in the 52nd District Court (Division 1) probation department. (Complaint ¶ 14-18.)

Plaintiff alleges that when she began her role as court administrator in 2018, she and others were "mistreated" by Judge Hartig. Specifically, Plaintiff alleges that "Judge Hartig required Plaintiff to attend daily-closed-door meetings, whereupon she berated Plaintiff and claimed that she was 'above' her." (Complaint ¶ 26.) Plaintiff alleges that Judge Hartig attempted to exert "inappropriate control over court administration, thereby usurping Plaintiff's supposedly autonomous role." (Complaint ¶27.) Plaintiff alleges that Judge Hartig "mistreated" other court employees and "demeaned and belittled" court appointed attorneys. (Complaint ¶ 20-22; 25, 28.)

Plaintiff complained about this behavior to Judge Fabrizio within the first month of her appointment. Judge Hartig's behavior toward Plaintiff persisted. Specifically, in May 2018, Judge Hartig unsuccessfully attempted to implement a "Court Administrator Absence Policy" after Plaintiff returned from medical leave. In August 2018, "Judge Hartig hailed Plaintiff to open court to accuse her of mismanaging grant funding." (Complaint ¶ 29-38.) Plaintiff reported these incidents to Judge Fabrizio. Judge Fabrizio "escalated the matter to SCAO" and

"admonished Judge Hartig for her behavior." Plaintiff alleges that she was advised by SCAO to "keep documenting" Judge Hartig's actions. (Complaint ¶ 37, 39-40.)

Plaintiff alleges that "for the next two years, Judge Hartig continued to interfere with discipline and morale" in the 52-4 District Court. In March 2020, Plaintiff informed Judge Fabrizio of Judge Hartig's ongoing "mistreatment of Plaintiff" and "other governmental employees" and asked for his help. (Complaint ¶ 41-42.) Judge Fabrizio referred Plaintiff to Human Resources, which investigated and concluded that Judge Hartig's conduct created a "hostile work environment."[2] (Complaint ¶ 43-44.)

In July 2020, Judge Fabrizio submitted to the Judicial Tenure Commission (JTC) a request for an investigation regarding the matter. (**Exhibit B**: JTC's Acknowledgment of Judge Fabrizio's Request.) The JTC is the arm of Michigan's judicial branch created pursuant to Mich. Const. Art VI, Sec. 30 to investigate allegations of judicial misconduct. JTC proceedings are initiated when a person submits a "request for an investigation" to the JTC. (MCR 9.220.) The JTC then investigates and decides to either dismiss the matter or institute of formal complaint if there is sufficient evidence to believe that the judge under investigation

---

[2] Plaintiff does not further elaborate on what she means by "hostile work environment." However, Defendants interpret "hostile work environment" as used by plaintiff to relate to the specific factual allegations in the complaint and *not* any unlawful harassment of an employee based on a protected class (e.g., race, religion, etc.) as there are no factual allegations to support this in the complaint.

"has engaged in misconduct."[3] (MCR 9.223 and 9.224.) At the conclusion of formal

proceedings on the complaint, the JTC may dismiss the complaint or recommend discipline,

removal, retirement, or suspension of the judge to the Michigan Supreme Court. (MCR 9.250,

9.251, 9.252.) With some exceptions, all commission proceedings are confidential until the

time a complaint is filed. (MCR 9.261.)[4]

Plaintiff alleges that, in her role as court administrator, Plaintiff "cooperated with the

JTC investigation, and she emailed [the investigator] periodically for updates." (Complaint ¶

47.) Plaintiff was also "responsible for providing names and contact as well as managing the

logistical details for the JTC interviews" that took place November 2020. (Complaint ¶ 48-

49.)

---

[3] MCR 9.202(B)(1) defines misconduct as:
  (a) persistent incompetence in the performance of judicial duties;
  (b) persistent neglect in the timely performance of judicial duties;
  (c) persistent failure to treat persons fairly and courteously;
  (d) treatment of a person unfairly or discourteously because of the person's race, gender, or other protected personal characteristic;
  (e) misuse of judicial office for personal advantage or gain, or for the advantage or gain of another; and
  (f) failure to cooperate with a reasonable request made by the commission in its investigation of a respondent.

[4] Plaintiff alleges that she filed a "complaint" with the JTC. (Complaint ¶ 2.) This allegation, viewed in the light most favorable to Plaintiff, appears to be a gross overstatement of the communications she made to Judge Fabrizio and HR, since only the JTC can file a "complaint" against a judge. Moreover, Plaintiff acknowledges "the JTC investigation is still ongoing" which means that, to date, the JTC has not filed a complaint. (Complaint ¶ 52.)

5

Plaintiff acknowledges that there were ongoing "staffing issues" and "chronic backlogs of filings in the civil department" at the 52-4 District Court. (Complaint ¶ 58.) She acknowledges that on September 13, 2021, Plaintiff was called to a meeting with Chief Judge Fabrizio regarding these issues. (Complaint ¶ 55-57.)

On December 10, 2021, Plaintiff alleges that she was "abruptly terminated while the JTC investigation remained open." (Complaint ¶ 59.) The reason for her termination initially "remained a mystery" to Plaintiff, but she has since concluded that her "cooperation with the SCAO and involvement in the JTC investigation was a substantial or motivating factor in Defendant's decision to terminate her." (Complaint ¶ 59-63.)

## **ARGUMENT**

### **Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *Albright v. Oliver*, 510 U.S. 266 (1994). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

"[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 679 (cleaned up). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not *shown* - that the pleader is entitled to relief. *Id.* (emphasis added).

A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.*

When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and

exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001); *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). The Court may consider "matters outside the pleadings" in a Rule 12(b)(6) motion without converting it into a Rule 56 motion if the facts contained therein "is not subject to reasonable dispute." *Jones v. City of Cincinnati*, 521 F.3d 555, 561-62 (6th Cir. 2008) (cleaned up).

## DISCUSSION

### I.      Count I (42 USC § 1983 - First Amendment Retaliation Claim)

To properly plead a First Amendment retaliation claim, the complaint must show that: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012). If *any* of these elements is not met, Plaintiff's §1983 claim fails and must be dismissed. Here, Plaintiff's complaint fails to show the first and third element.

### A.  Plaintiff Did not Engage in Constitutionally Protected Conduct.

As a public employee, for Plaintiff's speech to be constitutionally protected, she must show that (1) her speech was made as a private citizen, rather than pursuant to her official duties; (2) her speech involved a matter of public concern; and (3) her interest as a citizen in

speaking on the matter outweighed the state's interest, as an employer, in "promoting the efficiency of the public services it performs through its employees." *Handy-Clay*, 695 F.3d at 540. Stated another way, if Plaintiff's speech was *either* (1) employee-speech or (2) citizen-speech that did not involve a matter of public concern, then her First Amendment claim fails as a matter of law. If, however, Plaintiff can satisfy both, then the third step requires balancing the justifications for a speech restriction against the employee's free speech interest. *Boulton v. Swanson*, 795 F.3d 526, 531-532 (6th Cir. 2015). Here, the Court need not even move on to the third element because Plaintiff cannot satisfy the first two elements.

### 1.   Element 1: Plaintiff spoke as a public employee – not as a private citizen.

The Sixth Circuit in *Mayhew v Town of Smyrna*, 856 F.3d 456, 462-64 (2017), confirmed that, despite some earlier cases suggesting otherwise, whether Plaintiff spoke as a public employee or a private citizen is a legal question that the court must resolve.

Courts should treat this inquiry as "a practical one" that takes into account the reason for the speech, the setting of the speech, the speech's audience, and the general subject matter. In other words, the court asks "who, where, what, when, why, and how" in order to answer the ultimate question: whether the speech at issue is ordinarily within the scope of an employee's duties. *Mayhew*, 586 F.3d at 464.

As part of this inquiry, the Court may take into account the employee's job description, keeping in mind that "ad hoc or de facto duties can fall within the scope of an employee's

official responsibilities despite not appearing in any written job description." *Mayhew*, 586 F.3d at 465. Finally, the Court should recognize that "most jobs carry with them an inherent duty of internal communication." *Id*.

Applying this standard, the speech at issue here – Plaintiff's reporting of Judge Hartig's conduct to Judge Fabrizio (Complaint ¶ 41); her communications with the JTC and coordination of staff interviews (Complaint ¶ 47 and 48), and "cooperation with the SCAO" (Complaint ¶ 60) – absolutely fell within Plaintiff's ordinary job responsibilities as court administrator. Plaintiff was "*responsible* for" the "administrative and non-judicial functions of [the fourth] division of the 52nd District Court involving the management of…personnel…and other non-judicial functions." (**Exhibit A**: Job Description.) As part of her "*essential* job functions," she reviews and interprets the law "to ensure court operational compliance," and "as needed, confers with the State Court Administrative Office… regarding interpretation and implementation issues." She "prepares…reports and other documents related to the court operations for the County and State legal authorities ensuring accuracy and compliance with legislation." Finally, she "handles the more difficult and complex complaints and questions concerning court activities." (**Exhibit A**: Job Description.) Plaintiff's speech at issue here fell within the ordinary scope of her job and were part of her "essential" job duties.

Further, even without considering Plaintiff's job description, it is apparent on the face of the complaint that Plaintiff spoke as a public employee and not as a private citizen.

Plaintiff's complaint states that her job duties included "efforts to recruit and retain staff...,
improved operation and building securities, increased staff morale, and remedied labor
deficiencies." (Complaint ¶ 24.) Plaintiff's reporting to Judge Fabrizio that "Judge Hartig
continued to interfere with the discipline and morale in … the 52-4 District Court" is part and
parcel of these duties. (Complaint ¶ 41.) Likewise, Plaintiff's cooperation with the JTC
investigation, emailing the JTC investigator, and being "*responsible* for providing names and
contact as well as *managing* the logistical details for the JTC interviews" also stem from her
duties as court administrator. (Complaint ¶ 24.) There is no logical reason why Plaintiff would
be "responsible for" or "manage" any aspect of the JTC investigation unless acting as court
administrator.

That Plaintiff spoke as a public employee is also supported by the fact that her
communications were not made publicly (for example, to the media), but internally and "up
the chain of command" to the appropriate entities within Michigan's judicial branch –
specifically the 52nd District Court, SCAO, and the JTC.  "Most jobs carry with them an
inherent duty of internal communication." *Mayhew,* 856 F.3d at 465. "When a public
employee raises complaints or concerns up the chain of command at his workplace about his
job duties, that speech is undertaken in the course of performing his job." *Id*. As discussed in
the Statement of Facts, the 52nd District Court, SCAO and the JTC are all part of the judicial

branch that is ultimately overseen and administered by the Michigan Supreme Court as part of Michigan's "One Court of Justice."

Sixth Circuit case law makes clear that employee-speech made "up the chain of command" will not support a First Amendment claim. See, *Mayhew* at 455-466 (recognizing that reporting "to management" includes "escalating reports up the organizational chart" including outside "upper management") and *Wood v. 36th Dist. Court*, No. 21-1313, 2022 U.S. App. LEXIS 4504 (6th Cir. Feb. 18, 2022) (**Exhibit C**) (holding a court official did not engage in protected speech "when she notified the 36th District Court of potential legal violations… and the potential for litigation.") See also: *Keeling v. Coffee Cty.*, 541 F. App'x 522, 527 (6th Cir. 2013) (holding the speech was not protected because "[m]ost importantly, her speech pertained to her employment ... and was made up the chain of command.") and *Burgess v. Paducah Area Transit Auth.*, 387 Fed. Appx. 538, 545 (6th Cir. 2010) (holding communications made at the workplace and directed to management were not protected).

Finally, it should be noted that in *Pucci v. Nineteenth Dist. Court, 628 F.3d 752 (6th Cir. 2010),* the Sixth Circuit stated *in dicta* that: "Whether Pucci's complaint to SCAO was within her workplace duties is a question of fact, but a favorable reading of the record indicates that her complaints fell outside Pucci's assigned tasks as an administrator, given that this was an extraordinary rather than everyday communication." *Pucci* at 768. This sentence in *Pucci* should have no bearing on the outcome of the present case. First, *Pucci* is a 2010 case. In 2017,

the Sixth Circuit confirmed in *Mayhew* that the determination is a question of law, not fact. *Mayhew,* 856 F3d at 464. Second, the Court in *Mayhew* rejected the idea that "extraordinary" speech cannot encompass "ordinary job responsibilities." *Id* at 465. Third, the facts in *Pucci* are very different from the facts alleged by Plaintiff in the present case. Specifically, Pucci was a deputy court administrator, not the court administrator, and the chief judge in that case fired her after she reported concerns that he was illegally discriminating against criminal defendants because he had a "practice of interjecting his personal religious beliefs into judicial proceedings" and "imposing sentences based on religion." *Id* at 756. No such allegations exist here.

### 2.    Element 2: Plaintiff's speech was a personnel matter – not public concern.

In *Connick v. Myers*, 461 U.S. 138(1983), the United States Supreme Court clarified what makes a topic a matter of public concern. Myers, an assistant district attorney who was displeased with a proposed transfer, was fired for insubordination after she circulated a survey to her coworkers asking about their experiences with transfers, supervisors, and the office culture. *Id*. at 140-41. Refusing to presume that all matters that transpire within a government office are of a public concern, the Supreme Court determined this issue by examining "the content, form, and context of a given statement, as revealed by the whole record." *Id*. at 147-49. The Court reviewed the survey and found that the focus of the questions (which addressed trust in various supervisors, level of office morale, and need for a grievance committee) was

13

merely an extension of "Myers' dispute over her transfer" as opposed to being of "public import in evaluating the performance of the District Attorney as an elected official." *Id*. at 148. The fact that the communication was largely focused on matters of private concern, however, did not eliminate the protection of those aspects that were of public concern. Because the survey included a question addressing a public concern (pressure on assistant district attorneys to work on political campaigns), the Court then examined the competing interests, balancing the limited extent to which the survey touched on a matter of public concern with the employer's interest in maintaining discipline; it found the employer's interest to be stronger. *Id*. at 149-53.

Our Sixth Circuit has further explained the distinction between matters of public concern and personnel matters. Although government effectiveness and efficiency could generally be considered a matter of public concern, mere assertions of incompetence and poor management are run-of-the-mill employment disputes, and not of public concern—particularly when the recommended course of action would benefit the employee.  In contrast, speech addresses a matter of public concern when it alleges corruption and misuse of public funds, failure to follow state law, major state policy decisions, or discrimination of some form. *Boulton v. Swanson*, 795 F.3d 526, 532 (6th Cir. 2015) (cleaned up).

Applying this standard here, Plaintiff's complaint alleges that she was unlawfully terminated for reporting to Judge Fabrizio that she and other Court staff were being

"demeaned and belittled" by Judge Hartig. (Complaint ¶ 28 - 29.). Plaintiff's speech concerned no allegations that concern the public at large such as misuse of funds or other corruption, discrimination, or matters affecting major public policy decisions. While it is understandable that Plaintiff and other court employees regard working in an environment where they are not "demeaned and belittled" by a judge to be very important, the issue simply does not rise to the level of affecting the general public at large.  See: *Albert v Mitchell*, 42 F. App'x 691, 693 (6th Cir. 2002) (finding that an affair between two corrections officers is not a matter of public concern due to a lack of "nexus" to "any detriment to the public welfare"); *Basso v. Mich. Dep't of Corr.*, No. 2:08-cv-75, 2009 U.S. Dist. LEXIS 29098, at *28 (W.D. Mich. Apr. 2, 2009) (**Exhibit D**) (Plaintiff's complaints regarding Defendant White's personal indiscretions and inappropriate workplace conduct that Plaintiff alleges affected the "reputation, morale, and level of service provided by the institution" are not matters of public concern); and *Garceau v. City of Flint*, No. 12-cv-15513, 2013 U.S. Dist. LEXIS 159479, at *20 (E.D. Mich. Nov. 7, 2013) (**Exhibit E**) (a complaint regarding promotions not based on seniority or in violation of a collective bargaining agreement can be seen as one of "tantamount" importance to the officers but not affecting the commonwealth).

Keeping this public concern vs. private concern standard in mind, the present case is distinguishable from the holding in *Pucci*, 628 F.3d at 768, that a court officer's complaints alleging religious discrimination were of public concern because they concerned "the

propriety and legality of public, in-court judicial conduct." Specifically, Pucci made allegations of illegal discrimination regarding a judge who had a "practice of interjecting his personal religious beliefs into judicial proceedings" and "imposing sentences based on religion." *Id* at 756. No such allegations exist here.

**B.  There is no causal connection between plaintiff's termination and her speech.**

To prevail, Plaintiff must show that the speech at issue represented a substantial or motivating factor for her termination. Specifically, she must point to specific, nonconclusory allegations reasonably linking her speech to her termination. *Vereecke v. Huron Valley Sch. Dist*., 609 F.3d 392, 400 (6th Cir. 2010). The Sixth Circuit has interpreted "motivating factor" to mean the but-for cause, "without which the action being challenged simply would not have been taken." *Id*.

Although the Sixth Circuit is reluctant to find causation in temporal proximity alone, see, e.g., *Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim."); *Randolph v. Ohio Dep't of Youth Servs*., 453 F.3d 724, 737 (6th Cir. 2006) ("Although temporal proximity itself is insufficient to find a causal connection, a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection."); *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that Cooper was discharged four months after

filing a discrimination claim is insufficient to support an interference [sic] of retaliation."), the Sixth Circuit "recogniz[es] the possibility that, on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive, but also recogniz[es] that often evidence in addition to temporal proximity is required to permit the inference." *Vereecke*, 609 F.3d at 401.

Applying this standard here, Plaintiff's complaint lacks any specific, nonconclusory allegation that could reasonably link her speech regarding Judge Hartig to her termination. It defies logic that the chief judge – who had personally hired plaintiff (Complaint ¶ 19, MCR 8.110(C)(3)); who had been receiving Plaintiff's complaints regarding Judge Hartig and taking appropriate action on them since 2018 (Complaint ¶ 29, 39-40, 41, 43, 46); and who had requested that the JTC investigate the matter in July 2020 (**Exhibit B**: JTC's Acknowledgment of Judge Fabrizio's Request) – would then, while the JTC investigation had been ongoing *for over one year*, suddenly decide to terminate Plaintiff for this.

Plaintiff's complaint recognizes that there were "staffing issues" and "chronic backlogs of filings in the civil department." (Complaint ¶ 58.) This suggests that Plaintiff knows the actual reason for her termination; Plaintiff was no longer performing her job as court administrator satisfactorily. Plaintiff's complaint also recognizes that, on September 13, 2021, Judge Fabrizio attempted to address these issues with her. (Complaint ¶ 57.) Plaintiff was then terminated on December 10, 2021. Plaintiff's allegation that the reason for her termination

"remained a mystery" to her does not show a causal connection. (Complaint ¶ 63.) At best, it shows Plaintiff's lack of personal accountability regarding her underperformance as court administrator during the months leading up to her termination.

The bottom line is that Plaintiff's allegation that her "cooperation with the SCAO and involvement in the JTC investigation was a substantial or motivating factor in Defendant's decision to terminate her" is a conclusory allegation that is unsupported by the facts alleged. (Complaint ¶ 60.) The factual allegations made in the complaint do not "raise a right to relief above the speculative level," and therefore the complaint must be dismissed. *Bell Atlantic Corp.*, 550 U.S. at 555.

## II.       Count II - Violation of Michigan's Whistleblower Protection Act.

To establish a prima facie case under Michigan's Whistleblower Protection Act, Plaintiff must show that (1) she engaged in protected activity, (2) the Defendants discharged her, and (3) a causal connection exists between the protected activity and the discharge. MCL 15.362; *Shallal v. Catholic Social Services*, 455 Mich. 604, 610, 566 N.W.2d 571 (1997). Under the WPA, "protected activity" includes where a plaintiff: (1) reported a violation or suspected violation of a law or regulation to a public body, (2) was about to report such a violation to a public body, or (3) was asked by a public body to participate in an investigation. *Trepanier v. Nat'l Amusements, Inc.*, 250 Mich. App. 578, 583, 649 N.W.2d 754 (2002). Here, Plaintiff alleges she "engaged in protected

activity…because she cooperated with the SC[A]O and participated in an investigation held by the JTC." (Complaint ¶ 92.) Michigan courts refer to this as a "type 2" whistleblower claim. *Henry v. City of Detroi*t, 234 Mich. App. 405, 410 (1999).

Setting aside whether plaintiff's allegations qualify as protected activity, summary disposition of Plaintiff's WPA claim is appropriate because Plaintiff cannot meet the third prong of a prima facie claim. Plaintiff's complaint has not shown any causal connection between her alleged protected activity and her termination.

It is generally recognized that it is "usually difficult to prove" the causation element. *Cuddington v United Health Servs*, Inc, 298 Mich App 264, 275 (2012). Plaintiff must "show something more than merely a coincidence in time between protected activity and adverse employment action." *West v. GMC*, 469 Mich. 177, 186 (2003). As such, the timing of plaintiff's discharge does not, by itself, establish the necessary causation element for plaintiff's claim of retaliatory discharge. Plaintiff's complaint must show that Defendants terminated her *because of* her protected activity. *West* 469 Mich. at 185.

For example, in *West*, *supra*, the Michigan Supreme Court dismissed a WPA claim where the employee claimed he was terminated for reporting an alleged

assault to his supervisors. The employee was terminated approximately eight months after reporting the assault. The Court in *West* dismissed this claim, explaining:

> "[p]laintiff has not shown any reaction or conduct on the part of his supervisors that reasonably suggests that they were upset by the fact that plaintiff reported an assault to the police…. The fact that a plaintiff engages in a "protected activity" under the Whistleblowers' Protection Act does not immunize him from an otherwise legitimate, or unrelated, adverse job action." [*West*, 469 Mich at 187.]

The Court went on:

> The only evidence plaintiff has shown other than the temporal sequence of events is that one of the two supervisors he notified was nonchalant. This does not amount to evidence from which a reasonable juror could conclude that any adverse employment action directed at plaintiff was related to the police report lodged by plaintiff. [*Id*.]

Here, like in *West*, Plaintiff's complaint fails to show any reasonable causal connection between her termination and cooperation with SCAO and the JTC investigation. Like in *West*, Plaintiff does not allege any reaction or conduct on Defendants' part that reasonably suggests that Plaintiff was terminated because of her alleged protected activity. Instead, "there is nothing more than pure conjecture and speculation to link plaintiff's [alleged protected activity] to any subsequent

adverse employment action." *West* at 188.  See Section I(B), supra, for further analysis on this point. Dismissal on the merits is therefore appropriate.[5]

### III.    Sovereign Immunity Requires the Dismissal of the 52nd District Court and the Official Capacity Claim Against Judge Fabrizio in Count I.

Even if Plaintiff's Complaint survives a Rule 12(b)(6) motion, Count I against the 52nd District Court and Judge Fabrizio in his official capacity must be dismissed. States "possess certain immunities from suit in state and federal court. This immunity flows from the nature of the sovereignty itself as well as the Tenth and Eleventh Amendments to the United States Constitution and applies to claims against a State by citizens… and actions against state officials sued in their official capacity for money damages." *Pucci*, 628 F.3d at 760 (cleaned up).

In *Pucci, supra*, the Sixth Circuit held that a Michigan district court is an arm of the State of Michigan and therefore protected by sovereign immunity. In making this holding, the Court held that "there can be no doubt that all of Michigan's courts, including those trial-level [district] courts funded by local funding units, are part of one, unified judicial branch of the state," and for that reason are "entitled to the immunity protections of the Eleventh Amendment, and all federal claims against it must be dismissed." *Id.* at 763-764. Sovereign

---

[5] Alternatively, if this Court dismisses the federal claim in Count I, the Court may "decline to exercise supplemental jurisdiction" over Plaintiff's state law claim in Count II and dismiss it on that basis. See, *Brown v Cassens Transp. Co*. 546 F.3d 347, 363 (6th Cir. 2008).

immunity protection also applies to claims against judges in their official capacity. *Id*. at 764 ("As an officer of the Nineteenth District Court, [the judge] is also entitled to sovereign immunity from all federal claims against him in his official capacity seeking damages and retrospective relief."). See also, *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690, n.55, (1978) ("[O]fficial capacity suits ... represent only another way of pleading an action against an entity of which an officer is an agent.").

Thus, the federal §1983 claim against the 52nd District Court and Judge Fabrizio in his official capacity must be dismissed because these defendants are entitled to sovereign immunity under the Eleventh Amendment.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court enter a dismissal pursuant to Fed. R. Civ. 12(b)(6) and dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

OAKLAND COUNTY CORPORATION COUNSEL

*/s/Nicole B. Tabin*
Nicole B. Tabin (P73685)
Sr. Asst. Oakland County Corporation Counsel
Attorney for Defendants
1200 N. Telegraph Road, Dept. 419
Pontiac, MI 48341-0419

Dated: May 9, 2022

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 9, 2022, I electronically filed the foregoing document (Motion to Dismiss) with the Clerk of the Court using the ECF System which will send notification of such filing to the attorney(s) of record, and I hereby certify that I have mailed by United States Postal Service the same to the following non-ECF participants: None.

Respectfully submitted,

OAKLAND COUNTY CORPORATION COUNSEL

*/s/Nicole B. Tabin*
Nicole B. Tabin (P73685)
Sr. Asst. Oakland County Corporation Counsel
Attorney for Defendants
1200 N. Telegraph Road, Dept. 419
Pontiac, MI 48341-0419

Dated: March 9, 2022

23