# Wood v. 36th Dist. Court

United States Court of Appeals for the Sixth Circuit

February 18, 2022, Filed

File Name: 22a0076n.06

No. 21-1313

**Reporter**

2022 U.S. App. LEXIS 4504 *; 2022 FED App. 0076N (6th Cir.); 2022 WL 500654

BARI BLAKE WOOD, Plaintiff-Appellant, v. 36TH DISTRICT COURT; JUDGE WILLIAM C. MCCONICO; LAWANDA CROSBY, Defendants-Appellees.

**Notice:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. *SIXTH CIRCUIT RULE 28* LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE *RULE 28* BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**Prior History:** [*1] ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN.

*Wood v. 36th Dist. Court, 2021 U.S. Dist. LEXIS 53207, 2021 WL 1085267 ( E.D. Mich., Mar. 22, 2021)*

**Counsel:** For BARI BLAKE WOOD, Plaintiff - Appellant: Deborah L. Gordon, Elizabeth Ann Marzotto Taylor, Molly Savage, Sarah Gordon Thomas, Law Offices, Michigan, Bloomfield Hills, MI.

For 36TH DISTRICT COURT, JUDGE WILLIAM C. MCCONICO, LAWANDA CROSBY, Defendants - Appellees: Christopher M. Trebilcock, Clark Hill, Detroit, MI.

**Judges:** Before: SUTTON, Chief Judge; STRANCH and BUSH, Circuit Judges.

**Opinion by:** JANE B. STRANCH

## Opinion

**JANE B. STRANCH, Circuit Judge.** Bari Blake Wood, a former Chief Magistrate Judge for the 36th District Court in Michigan, brought claims against that Court, alleging *First Amendment* retaliation, violation of Michigan's whistleblower statute, and termination in violation of public policy. Wood had reported concerns regarding the legality of the Court's warrant and arraignment practices to her supervisor and coworkers. She was subsequently demoted from her role as Chief Magistrate Judge and then terminated. The district court dismissed Wood's *First Amendment* claim, finding that her speech was pursuant to the ordinary scope of her job duties, and declined to exercise supplemental jurisdiction over her remaining state law claims. For the [*2] reasons that follow, we **AFFIRM** the district court's judgment.

**I. BACKGROUND**

**A. Factual Background**

Because this matter involves review of the district court's order of dismissal under *Federal Rule of Civil Procedure 12(b)(6)*, we accept as true the facts set out in the complaint, as follows.

Bari Wood was appointed Magistrate Judge of the 36th District Court by then-Chief Judge Nancy M. Blount in January 2016.[1] On November 15, 2017, Wood was appointed Chief Magistrate. In that role, she "provided oversight and guidance to the Court's other Magistrate Judges" and she "continued to address potential legal and civil violations she observed were occurring in the adjudication of criminal cases by Court personnel." For example, Wood "created guidance and training materials for the Magistrate Judges on topics such as how to conduct legally proper misdemeanor and felony arraignment hearings, and small claims and informal hearings." During her tenure as a Magistrate Judge, her "performance was at all times satisfactory or better." Wood also "notified" the Court of areas where its practices "fell short of legal requirements."

In 2018, Wood observed a practice in which Court personnel approved search warrants that lacked "crucial legal requirements." [*3] Later that year, she raised concerns with other magistrate judges about whether the practices were consistent with state and federal law and also advised then-Chief Judge Blount of her concerns.

In December 2018, Wood also realized that arraignment hearings were not being conducted legally. In January 2019, she again notified then-Chief Judge Blount and the Court Administrator of her concerns. Judge Blount responded that this "was not the Court's problem," and she "instructed [Wood] . . . not to raise these concerns any further."

In March 2019, Wood heard from an acquaintance that the American Civil Liberties Union (ACLU) intended to sue over the unconstitutional practices regarding felony arraignment hearings. Wood met with Judge Blount, told her of the pending litigation, and then contacted the other Magistrate Judges about the potential litigation "so they could make educated determinations on whether and how to entertain bond arguments at arraignment hearings." A month later, a class of plaintiffs represented by the ACLU sued Judge Blount and other Magistrate Judges, including Wood, for violations of their civil rights stemming from the felony arraignments.

On May 29, 2019, Wood "met [*4] with the other Magistrate Judges, the Chief Judge, Chief Judge Pro Tem, the Court's in-house counsel, the Court Administrator, and outside counsel representing the Court officials named as defendants in the ACLU litigation." During that meeting, Wood "was questioned at length about her conversation with her acquaintance regarding the potential for litigation," and explained that she advised the Court of the basis for the ACLU lawsuit "before the events giving rise to it occurred."

A few months later, Wood met with outside counsel representing the Court officials in the ACLU litigation. Wood told counsel that she advised the Court of the legal basis for the potential lawsuit, to which counsel expressed concern "that [Wood's] knowledge of and attempts to redress the Court's potential legal violations would negatively impact their defense of the lawsuit filed against them."

Defendant William McConico was appointed Chief Judge of the 36th District Court on November 22, 2019. Shortly thereafter, he was briefed on the status of the ACLU litigation, "including [Wood's] attempts

---

[1] Although Wood's complaint did not contain allegations regarding the relevant statute, under Michigan law, Magistrate Judges of the 36th District Court are considered at-will employees who "serve at the pleasure of the chief judge of the thirty-sixth district." *M.C.L. § 600.8501(3)*.

to forewarn the Court about the legal issues it presented." A month later, the Court Administrator notified Wood that [*5] "Defendant McConico decided to remove [her] from the Chief Magistrate position." A couple of weeks later, Wood was terminated. Although the Court never provided Wood a reason for her termination, she alleges that she was terminated "because she had a history of reporting and seeking to remedy legal violations by the Court, and because these actions threatened their legal defense against the ACLU litigation."

**B. Procedural Background**

Wood sued the 36th District Court, Chief Judge McConico, and Lawanda Crosby, the Court Administrator, alleging that she was terminated in retaliation for exercising her First Amendment rights and that her termination violated the Michigan Whistleblower Protection Act and public policy. Defendants moved to dismiss the complaint, arguing that its allegations lacked a legal basis. They also moved to strike portions of the complaint, arguing that they contained work-product protected or attorney-client privileged communications.

The district court granted in part and denied in part both motions. On the motion to strike, the district court reasoned that Paragraphs 36, 45, and 46 contained "specific information shared by Plaintiff when she was an employee of the 36th District [*6] Court and in her capacity as an employee of the court." It therefore granted the motion to strike as to those paragraphs only. The district court granted the motion to dismiss concerning Wood's First Amendment retaliation claim. Focusing exclusively on the first element under the analysis set forth in Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)—whether Wood spoke as a citizen or as an employee—the district court reasoned that "all the allegations in the complaint were made as 'part and parcel' of Plaintiff's role as a magistrate or chief magistrate Judge." Accordingly, because Wood's speech was a part of her job duties, it was not constitutionally protected, and she failed to state a plausible claim for relief. The district court then declined to exercise supplemental jurisdiction over the pendent state law claims and dismissed those remaining claims without prejudice.

Wood timely appealed.

**II. ANALYSIS**

On appeal, Wood challenges the district court's dismissal of her First Amendment claim and its decision to strike three paragraphs in her complaint pursuant to attorney-client privilege. Because we find that the stricken allegations do not affect our analysis of the plausibility of Wood's First Amendment retaliation claim, we do not reach the latter issue.

We review de novo [*7] a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008). The court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded factual allegations as true, and examine[s] whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Hill v. Snyder, 878 F.3d 193, 203 (6th Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

Wood's only federal claim is her First Amendment retaliation claim under 42 U.S.C. § 1983. To properly plead a § 1983 claim, a plaintiff must (1) "allege that a defendant acted under color of state law"; and (2) "that the defendant's conduct deprived the plaintiff of rights secured under federal law." Handy-Clay v.

City of Memphis, 695 F.3d 531, 539 (6th Cir. 2012) (citing Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010)). The district court here did not address whether Wood adequately alleged state action, and the parties do not raise the issue on appeal. We will assume that this requirement has been met. *See* Fritz, 592 F.3d at 723 ("[I]t does not appear from the pleadings to be in dispute whether Defendant Hudson acted under color of state law, and so it will be assumed that Plaintiff sufficiently pled state action for purposes of evaluating the motion to dismiss."). The critical question, therefore, is whether the 36th District Court deprived Wood of her First Amendment rights when it demoted and then terminated [*8] her.

To properly plead a First Amendment retaliation claim, a plaintiff must plead factual allegations sufficient to establish that "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." Handy-Clay, 695 F.3d at 539 (quoting Fritz, 592 F.3d at 723). Here, the district court concluded that the first element was not met and declined to address the remaining elements, so we too focus our analysis on that first element.

The First Amendment protects public employees from adverse employment actions, including retaliation, for their protected speech conduct. *See* Garcetti v. Ceballos, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006); Lane v. Franks, 573 U.S. 228, 235-36, 134 S. Ct. 2369, 189 L. Ed. 2d 312 (2014). There is "considerable value" in protecting public employees' speech, "[f]or '[g]overnment employees are often in the best position to know what ails the agencies for which they work.'" Lane, 573 U.S. at 236 (second alteration in original) (quoting Waters v. Churchill, 511 U.S. 661, 674, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994) (plurality opinion)). Recognizing "the government's countervailing interest in controlling the operation of its workplaces," *id.*, there must be "a balance between the interests of the [public employee], as a citizen, in commenting upon [*9] matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). For these reasons, a plaintiff must allege that she spoke as a citizen on a matter of public concern before we can address actions that are alleged to be adverse and improperly motivated.

The analysis turns on a two-part inquiry. *See* Boulton v. Swanson, 795 F.3d 526, 531-32 (6th Cir. 2015). First, the court must address the "threshold inquiry," which contains two components: (1) whether the employee spoke as a "citizen," and (2) whether the employee spoke "on a matter of public concern." Id. at 531 (quoting Garcetti, 547 U.S. at 418). If both components of the threshold inquiry are satisfied, "then [the court] balance[s] the justifications for a speech restriction against the employee's free speech interest." *Id.* (quoting Garcetti, 547 U.S. at 418).

The district court's decision is properly based on the parties' main dispute—whether Wood was speaking as a citizen or as an employee when she spoke against the allegedly unconstitutional arraignment processes and through her reports regarding the same. Thus, this case comes down to whether Wood's incidents of protected speech fell within the ordinary scope of her job duties.[2] *See* Lane, 573 U.S. at 240

---

[2] In their briefs, both parties rely on documents and statutes that they argue evince Wood's ordinary job duties. These documents were initially attached to the 36th District Court's motion to dismiss and were not attached to Wood's complaint. The district court provided no indication that it relied on the additional evidence, nor did it state that it was converting the motion to dismiss into a motion for summary judgment. "In general, the appellate court should have before it the record and facts considered by the District Court." United States v. Barrow, 118 F.3d 482, 487 (6th Cir. 1997). Therefore, like the district court, we rely solely on the allegations set forth in the complaint in analyzing Wood's First Amendment retaliation claim.

(noting that [*10] the key question in the citizen speech analysis is "whether the speech at issue is itself ordinarily within the scope of an employee's duties").

*Garcetti* addressed how to determine when a public employee is speaking as a citizen. *Garcetti, 547 U.S. at 421*. There, the Supreme Court explained the principle governing these cases—"when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for *First Amendment* purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* The Court stated that the "controlling factor" is whether the statements were "made pursuant to [the public employee's] duties"; that is, whether the statements were among the things that the employee "was employed to do." *Id.* Though it did not specify a framework for making this determination, it condemned reliance on "excessively broad job descriptions" and cautioned against a focus on formal job descriptions because the inquiry ought to be "a practical one." *Id. at 424-25*.

"Determining whether speech is unprotected due to the *Garcetti* exception . . . has proven to be challenging." *Boulton, 795 F.3d at 533*. In *Lane*, the Supreme Court clarified the *Garcetti* exception as follows: "*Garcetti* said nothing about speech that simply relates to public [*11] employment or concerns information learned in the course of public employment." *Lane, 573 U.S. at 239*. Rather, "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id. at 240*. According to the Supreme Court, the term "official responsibilities" includes the responsibilities an employee undertook when she "went to work and performed the tasks [s]he was paid to perform." *Id. at 239* (quoting *Garcetti, 547 U.S. at 422*).

In *Boulton*, we explained the effect of *Lane* on our precedent: "[a]fter *Lane*, the *Garcetti* exception to *First Amendment* protection for speech residing in the phrase 'owes its existence to a public employee's professional responsibilities' must be read narrowly as speech that an employee made in furtherance of the ordinary responsibilities of his [or her] employment." *795 F.3d at 534*. In making this determination, we consider several "non-exhaustive factors," including the motivation behind the speech (i.e., whether the employee is speaking to further a job duty or an unrelated goal), where the speech was made (i.e., was it on-the-clock in the workplace?), the speech's audience (i.e., was it within the chain of command?), and its general subject matter. *See, e.g., DeCrane v. Eckart, 12 F.4th 586, 596 (6th Cir. 2021)*; *Mayhew v. Town of Smyrna, 856 F.3d 456, 464 (6th Cir. 2017)*.

==Wood [*12] alleges that she engaged in protected speech "when she notified [the 36th District Court] of potential legal violations in the approval of warrants, conduct of felony arraignments, and the potential for litigation," and when she "reiterated these potential legal violations in preparing to defend against the ACLU litigation."[3]==

To guide our analysis, we first assess Wood's allegations to define the ordinary scope of her job duties. Wood alleges that as the Chief Magistrate Judge, she was "responsible for presiding over a docket of cases as a Magistrate Judge." In her capacity as Chief, she additionally "provided oversight and guidance to the Court's other Magistrate Judges"; "address[ed] potential legal and civil rights violations she observed were occurring in the adjudication of criminal cases by Court personnel"; and trained personnel, including other Magistrate Judges, on "topics such as how to conduct legally proper misdemeanor and felony arraignment hearings, and small claims and informal hearings." Wood also alleges that as part of her role, she "notified the Court of several other issues, particularly concerning

---

[3] At oral argument, counsel for Wood clarified that her complaint alleges that she was retaliated against only for her reports to the 36th District Court, and not for her conversation with her acquaintance about the ACLU's plan to initiate litigation against the 36th District Court.

areas where the Court's practices fell short of legal requirements." [*13] To that end, she historically worked to help address those issues, resulting in some "[p]olice officers and prosecutors . . . [becoming] extremely upset with the changes [Wood] advocated." We take these allegations to encompass the ordinary scope of her job duties.

Against this backdrop, we analyze each allegation of protected speech. First, Wood alleges that she observed Court personnel approve search warrants that lacked "crucial legal requirements." She subsequently advised her fellow Magistrate Judges of the problem and notified then-Chief Judge Blount of her concerns. Viewed in light of her allegations regarding her ordinary job duties, Wood acted here pursuant to her duty, as she alleged, to "provide[] oversight and guidance to the Court's other Magistrate Judges" and her duties to "address potential legal and civil rights violations" that she observed. Wood, moreover, reported the problem within her chain of command, see DeCrane, 12 F.4th at 596, and the subject matter of her speech addressed problems concerning her case work as a Magistrate Judge. This part of Wood's speech constituted speech as a government employee.

Next, Wood alleges that she notified then-Chief Judge Blount and the court administrator [*14] that "the Court's arraignment hearings were not being conducted in accordance" with state and federal law. Wood contends that Judge Blount's response—disclaiming that this was the "Court's problem" and instructing Wood not to raise "these concerns any further"—indicates that her speech on this issue was not pursuant to her job duties. But Wood's observations about the practices of other Magistrate Judges fall precisely within her alleged job duties of providing oversight and guidance to other Magistrate Judges and addressing potential legal and civil rights violations by the 36th District Court. Likewise, even though other districts participated in some arraignments, that too falls within her alleged duty to notify the Court of problematic practices. To this end, Wood only raised these concerns with her supervisor within the chain of command, further showing that she intended to speak in her capacity as an employee. See DeCrane, 12 F.4th at 596. Here too, Wood's speech was pursuant to her role as a government employee and not as a citizen.

Wood alleges that a few months later, following her conversation with her acquaintance, she informed then-Chief Judge Blount and her fellow Magistrate Judges of an imminent [*15] ACLU lawsuit so that she and the Magistrates "could make educated determinations on whether and how to entertain bond arguments at arraignment hearings." In so alleging, Wood essentially concedes that this report pertained to her own duties as a Magistrate Judge—that it was part and parcel of her job in managing her docket to figure out how to evaluate bond arguments at arraignment hearings in light of the impending litigation. That Judge Blount previously disclaimed Wood's reports regarding the legality of the arraignment process does not help this second allegation because the first incident addressed entirely different concerns pertaining to the oversight of other judges. By contrast, here, Wood alleges that she was informing Judge Blount and her colleagues of the litigation in order to determine how she should proceed in her role as Magistrate Judge in light of the litigation. In other words, she was speaking to her colleagues and up the chain of command to make a determination as to how she needed to manage her own docket of arraignment hearings. Her speech here, therefore, falls squarely within the ordinary scope of her job duties.

Finally, Wood alleges that she engaged in protected [*16] speech when she met with then-Chief Judge Blount, the Court Administrator, other Magistrate Judges, in-house legal counsel, and external counsel regarding the ACLU litigation. At that meeting, she explained that she had already reported the practices underpinning the ACLU's suit. The problem with Wood's allegations here is that she attended those meetings not because she was attending as a citizen but based on her responsibilities as Chief Magistrate Judge and because she was named as a defendant in her official capacity in the litigation. As a result, her speech in these circumstances was again pursuant to her role as an employee.

Wood also argues, pursuant to *Lane*, that her obligation to "participate truthfully" in the ACLU litigation was protected as citizen speech. In *Lane*, however, the plaintiff was terminated pursuant to her sworn testimony during a criminal trial to which she was subpoenaed. *Lane, 573 U.S. at 231*. There, the plaintiff's obligation to provide truthful sworn testimony was independent of her job duties. *Id. at 238*. By contrast, Wood does not allege that she had an independent obligation to participate or speak at that meeting beyond her obligations to attend the meeting by virtue of her job. Thus, the [*17] conduct alleged in her complaint is distinct from the obligation to truthfully testify under oath described in *Lane*.

In light of the foregoing, we find that each allegation of speech, read in light of the job duties that Wood alleged in her complaint, was pursuant to her capacity as an employee, not a citizen. Wood's *First Amendment* retaliation claim fails the initial *Garcetti* analysis as a matter of law because her speech was not protected citizen speech. As a result, we do not address and take no position on Wood's allegations concerning the remaining elements of her *First Amendment* retaliation claim. The district court did not err in dismissing her complaint for failing to state a claim.

## III. CONCLUSION

We **AFFIRM** the district court's judgment.

---

**End of Document**