# Basso v. Michigan Dep't of Corr.

United States District Court for the Western District of Michigan, Northern Division

April 2, 2009, Decided; April 3, 2009, Filed

File No. 2:08-cv-75

**Reporter**
2009 U.S. Dist. LEXIS 29098 *; 2009 WL 929028

ALBERT BASSO, Plaintiff, v. STATE OF MICHIGAN DEPARTMENT OF CORRECTIONS, and PATRICIA L. CARUSO, JAMES MACMEEKIN, and JEFF WHITE, in their individual and official capacities, Defendants.

**Subsequent History:** Claim dismissed by *Basso v. State Dep't of Corr., 2010 U.S. Dist. LEXIS 41916 (W.D. Mich., Apr. 29, 2010)*

**Counsel:** [*1] For Albert Basso, plaintiff: Christopher James Trainor, LEAD ATTORNEY, Shawn Christopher Cabot, Trainor & Toombs, White Lake, MI; MacKenzie K. Brown, Christopher Trainor & Associates, White Lake, MI.

For Patricia L. Caruso, defendant: Karen K. Kuchek, MI Dept Attorney General (Employ,Elect,Torts), Public Employment, Elections and Torts Division, Lansing, MI; Yasmin Josefina Elias, Michigan Department of Attorney General, Lansing, MI.

For James MacMeekin, Jeff White, defendants: Yasmin Josefina Elias, Michigan Department of Attorney General, Lansing, MI.

**Judges:** HON. ROBERT HOLMES BELL, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ROBERT HOLMES BELL

## Opinion

This matter is before the Court on a motion to dismiss filed by Defendants Michigan Department of Corrections, Patricia L. Caruso, James MacMeekin, and Jeff White. (Dkt. No. 17.) Plaintiff Albert Basso responded to the motion and the Court heard oral arguments by the parties.

I.

Except where noted, the following facts are taken from the allegations in Plaintiff's complaint. In 2005 and 2006, Plaintiff was a corrections officer with the Michigan Department of Corrections. ("MDOC"), employed at the Ojibway Correctional Facility (the "OCF Facility"). Plaintiff alleges that [*2] the OCF Facility became a multi-level facility in 2005, designated to receive prisoners with higher security level classifications. Plaintiff complained about what he perceived as inadequate staffing and security measures at the OCF Facility in view of the higher security level of the prisoners being held there. Plaintiff alleges that Defendants intentionally exposed the corrections officers at the OCF Facility to prisoners of a higher security level than the facility was equipped to accommodate.

Plaintiff alleges that Defendant White, the warden at the OCF Facility, showed favoritism towards black inmates as opposed to white corrections officers. Plaintiff complained about Defendant White's activities, including frequenting gentleman's clubs, seducing local women, favoring black inmates, and socializing with female corrections officers. Plaintiff alleges that Defendant White intentionally moved Plaintiff to a more dangerous shift in retaliation for speaking out against him.

On April 9, 2006, there was a riot at the OCF Facility involving the inmates (the "Disturbance"). During the Disturbance, Plaintiff was attacked by inmates and sustained stab wounds to his neck and head and blows [*3] to his face and body. Plaintiff alleges that, prior to the Disturbance, he saw Defendant White speaking with some of the inmates that attacked Plaintiff.

In this action, Plaintiff has filed claims against the prison warden at the time, Defendant White, the regional director for MDOC in charge of the OCF Facility, Defendant MacMeekin, and the director of the MDOC, Defendant Caruso, for (1) violation of Fourteenth Amendment rights to procedural and substantive due process, pursuant to 42 U.S.C. § 1983, (2) violation of the Equal Protection Clause, pursuant to 42 U.S.C. § 1983, (3) interference with the "right to form and enter contracts," pursuant to 42 U.S.C. § 1981, (4) common law gross negligence, (5) First Amendment retaliation, pursuant to 42 U.S.C. § 1983, and (6) constitutional violations by the MDOC.

II.

Eleventh Amendment Immunity

1. Official Capacity

Defendants request dismissal of all claims against the MDOC, and against employees of the State of Michigan, Defendants White, Caruso, and MacMeekin, in their official capacity, based on Eleventh Amendment immunity. "The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived [*4] its sovereign immunity or consented to be sued in federal court." Grinter v. Knight, 532 F.3d 567, 572 (6th Cir. 2008). A suit against state officials in their official capacity is a suit against their office. Id. Michigan has not waived immunity or consented to suit. Abick v. State of Michigan, 803 F.2d 874 (6th Cir. 1986). The MDOC is an "arm of the state" entitled to Eleventh Amendment immunity. Turnboe v. Stegall, No. 00-1182, 2000 U.S. App. LEXIS 27967, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000) (unpublished). Plaintiff does not seek prospective relief. See Kentucky v. Graham, 473 U.S. 159, 167, n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (noting that "official-capacity actions for prospective relief are not treated as actions against the State"). Plaintiff apparently does not dispute Defendants' Eleventh Amendment immunity argument, as Plaintiff offers no response. The Court will dismiss all claims against MDOC, and all claims against Defendants White, Caruso and MacMeekin in their *official* capacity.

2. Individual Capacity (Qualified Immunity)

Defendants also argue that they have qualified immunity with respect to all claims. in the complaint.

> Qualified immunity is an affirmative defense that will protect a state official sued in his [*5] individual capacity from damages liability when two questions have been answered: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and (2) if the answer to the first question is yes, we must decide whether the violated right was "clearly established."

Gunasekera v. Irwin, 551 F.3d 461, 471 (6th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 200-01, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). Analysis of each claim plead in the complaint follows in Section III, *infra.*

### III.

Defendants also seek dismissal of all counts in the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, based on failure to state a claim under which relief may be granted.

The Federal Rules of Civil Procedure provide for a liberal system of notice pleading. Fed. R. Civ. P. 8(a). A plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

In [*6] considering such a motion pursuant to Rule 12(b)(6), the Court assumes that all the allegations in the complaint are true. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993). Dismissal of the complaint is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 562 (6th Cir. 2003); Goad v. Mitchell, 297 F.3d 497, 500 (6th Cir. 2002). The denial of a motion to dismiss for failure to state a claim does not preclude a later summary judgment motion arguing that the plaintiff in fact cannot show evidence to support the claim. Stemler v. Florence, 350 F.3d 578, 590 (6th Cir. 2003).

**A. Count I - Due Process**

1. Procedural Due Process

Under the Due Process Clause, the State may not deprive an individual of life, liberty, or property without due process of law. [*7] Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). To show a claim of violation of Fourteenth Amendment procedural due process, Plaintiff must show a deprivation of a protected liberty interest or property interest. Johnston-Taylor v. Gannon, 907 F.2d 1577, 1581 (6th Cir. 1990). Plaintiff alleges that his procedural due process rights were violated because Plaintiff, and other staff at the OCF Facility, were not provided a hearing regarding the decision to assign high-security inmates to the OCF Facility. (Dkt. No. 1, Compl. P 51, 54.) Plaintiff's complaint alleges that the prison employee handbook "created a *liberty* interest in a safe workplace[.]" (Compl. P 51.) (emphasis added) In his response to the motion for summary judgment, Plaintiff argues that he had a *property* interest in his job pursuant to the collective bargaining agreement and the employee handbook.

"[P]ublic employment in and of itself is not a property interest automatically entitling an employee to procedural due process." Chilingirian v. Boris, 882 F.2d 200, 205 (6th Cir. 1989). The Court notes that Plaintiff does not allege that his job was terminated by Defendants, or that Defendants changed his pay. At best, Plaintiff's [*8] working conditions and shift change might be characterized as a deprivation of employment benefits, which in some circumstances can constitute property interests. See Gunasekera, 551 F.3d at 468 (characterizing a reduced teaching load as "benefits"). "To have a property interest in a

benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)*.

Plaintiff offers no legal basis or factual support for the proposition that a particular shift assignment or a particular working environment constitutes a protectible property interest. Plaintiff cites no authority supporting its position. Moreover, Plaintiff does not allege that the terms of the employee handbook or collective bargaining agreement created a "legitimate claim of entitlement" to specific working conditions (as opposed to an abstract expectation of "safety"), such as a right to work in a prison without high-security prisoners, or a right to work a particular shift. While Plaintiff may have expected that his working conditions [*9] at the prison would remain relatively unchanged, he has not alleged a sufficient basis for a "legitimate claim of entitlement" to any particular conditions. In the absence of such allegations, Plaintiff fails to plead a claim of violation of procedural due process. See *Brown v. Brienen, 722 F.2d 360, 365 (7th Cir. 1990)* (holding that "[d]isputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the *Fourteenth Amendment*") (cited in *Alexander v. City of Toledo, No. 99-3875, 2000 U.S. App. LEXIS 33488, 2000 WL 1871693, at *4 (6th Cir. Dec. 13, 2000)* (unpublished)).

2. Substantive Due Process

The substantive component of the *Due Process Clause* "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Id.* First, Defendant argues that Plaintiff has not asserted a fundamental interest subject to substantive due process protection. Plaintiff was physically attacked by prison inmates. Plaintiff alleges that Defendants actions increased the risk that Plaintiff would be subject to this sort of harm. "Individuals have 'a clearly established right under the substantive component of the *Due Process Clause* to personal security [*10] and to bodily integrity . . . it goes without saying that an individual's 'interest in preserving her life is one of constitutional dimension.'" *Kallstrom v. City of Columbus, 136 F.3d 1055, 1062-63 (6th Cir. 1998)* (quoting *Doe v. Claiborne County, 103 F.3d 495, 506-07 (6th Cir. 1996)*; *Nishiyama v. Dickson County, 814 F.2d 277, 280 (6th Cir. 1987)*, *overruled on other grounds by Lewellen v. Metro. Gov't of Nashville & Davidson County, 34 F.3d 345, 350 (6th Cir. 1994))*.

However, the *Due Process Clause* places limitations on *state* action. *Kallstrom, 136 F.3d at 1065*. Plaintiff has not alleged that any of the Defendants directly harmed Plaintiff; Plaintiff has alleged that Defendants' actions, including admitting prisoners with a higher level of security to the OCF Facility, changing Plaintiff's shift, and directing inmates to harm Plaintiff, created a substantial risk of serious bodily harm for Plaintiff. Under the state-created danger doctrine, the state may be liable for injury caused by a private person if the plaintiff can show:

> (1) an affirmative act by the governmental actor either created or increased the risk that the plaintiff would be exposed to the injurious conduct of the private [*11] person;
>
> (2) the governmental actor's act especially endangered the plaintiff or a small class of which the plaintiff was a member; and
>
> (3) the governmental actor had the requisite degree of culpability.

*Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ., 542 F.3d 529, 534 (6th Cir. 2008)*. The requisite level of culpability includes government conduct that "shocks the conscience." *Id. at 535*. Outside the context of

an individual being held in government custody, claims of exposure to state-created danger must meet a "very stringent" standard of government culpability. Id. at 538.

Where the government action "was not done for the purpose of injuring someone or in furtherance of invidious discrimination" the Court will consider whether the relationship between the government and the plaintiff was voluntary. Id. at 536. Claims of government employees regarding an unsafe workplace are "particularly unlikely to shock the conscience." Id. at 537. Failure to provide a safe working environment is not, in itself, "conscience shocking, in a constitutional sense," because it is not "arbitrary." Id.

> [W]here the governmental actor does not *intentionally harm the victim or invidiously discriminate against* [*12] *him,* conduct endangering the victim will not shock the conscience if the victim has voluntarily undertaken public employment involving the kind of risk at issue and the risk results from the governmental actor's attempt to carry out its mandatory duties to the public.

Hunt, 542 F.3d at 543-44 (emphasis added). Because of the voluntary aspect of exposure to dangers in the context of government employment, "cases in which the plaintiff is a government employee suing for injuries received in the line of duty . . . are particularly unlikely to succeed." Id. at 536. Even deliberate exposure of public employees to high risk does not shock the conscience. Id. at 537.

However, as Hunt indicates, the voluntariness of the public employment relationship does not preclude claims of arbitrary or invidious conduct. Arbitrary actions are those that have no legitimate governmental purpose. Id. at 540. Such conduct includes actions "intentionally designed to punish," such as giving a worker a "particularly dangerous assignment in retaliation for a political speech . . . ." Id. at 538 (quoting Collins v. City of Harker Heights, 503 U.S. 115, 119, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)); see County of Sacramento v. Lewis, 523 U.S. 833, 834, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) [*13] ("[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."). While Plaintiff's complaint is not a model of clarity, Plaintiff has alleged that Defendant White intentionally assigned him to a more dangerous shift, and appears to allege that Defendant White encouraged inmates to attack Plaintiff prior to the riot, in each case, in retaliation for speaking out about Defendant White's allegedly improper conduct. Plaintiff has also alleged that Defendants MacMeekin and Caruso made changes to the OCF Facility and failed to provide adequate security and staffing for racially discriminatory reasons. For purposes of this motion, the Court finds that these allegations are sufficient to plead the requisite level of government culpability to state a substantive due process claim. Because it would be clear to a reasonable officer that arbitrary and racially discriminatory action designed to harm an individual is unlawful, the Court finds that Defendants are not subject to qualified immunity with respect to this claim at this stage of the proceedings. See Perez v. Oakland County, 466 F.3d 416, 427 (6th Cir. 2006) [*14] ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (quoting Saucier v. Katz, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

### B. Count II - Equal Protection

Count II of Plaintiff's complaint alleges a violation of the Equal Protection Clause. "To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." Club Italia Soccer & Sports Org., Inc. v. Charter Township of Shelby, 470 F.3d 286, 298 (6th Cir. 2006).

Case 2:22-cv-10470-VAR-EAS ECF No. 8-5, PageID.79 Filed 05/09/22 Page 6 of 10

Page 6 of 10
2009 U.S. Dist. LEXIS 29098, *14

Claims of violation of the Equal Protection Clause based on discrimination in the workplace are subject to the same standards as claims of discrimination under Title VII. Gutzwiller v. Fenik, 860 F.2d 1317 (6th Cir. 1988) ("As this court has observed several times, the showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an [*15] equal protection claim under section 1983."); Watson v. City of Cleveland, 202 F. App'x 844, 856 (6th Cir. 2006) ("Proving intentional discrimination for an equal protection claim brought under § 1983 requires the plaintiff to make the same showing required to prove a violation of Title VII.").

A plaintiff claiming discrimination may provide direct evidence of discrimination, or a plaintiff may establish a *prima facie* case under the burden-shifting analysis described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). White v. Baxter Healthcare Corp., 533 F.3d 381, 391 (6th Cir. 2008). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. A *prima facie* case of employment discrimination requires a plaintiff to show that: (1) he is a member of a protected class; [1] (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was treated differently than similarly situated individuals who are not members of his protected class. See McDonnell Douglas, 411 U.S. at 800-04.

However, to survive a motion to dismiss, Plaintiff is not required to *plead* all the elements of a *prima facie* case. Swierkiewicz, 534 U.S. at 515. Plaintiff alleges that changes to the OCF Facility and changes to Plaintiff's shift assignment constitute a violation of the Equal Protection Clause. Plaintiff's complaint alleges that "Warden White had shown favoritism toward black inmates generally, and it was felt by white corrections officers that they were less favored by Defendant White" and that "Defendants had a policy, procedure or custom of treating white officers and facilities whose officer staff is primarily composed of white officers less favorably than black officers and facilities whose officer staff is primarily comprised of black officers." (Compl. PP 42, 75.) The Court agrees with Defendants that favorable treatment of inmates is not relevant to a claim by a prison guard because inmates and prison guards are not [*17] "similarly situated," and non-specific allegations of "favoritism" and "less favorable" treatment do not in themselves provide sufficient notice of the basis for an equal protection claim.

Plaintiff has also alleged that Defendant White intentionally assigned Plaintiff to a more dangerous shift as retaliation for speaking out about Defendant White. Plaintiff's complaint does not allege that Defendant White's actions were motivated by race or Plaintiff's membership in a suspect class, that Plaintiff was treated differently from any similarly-situated prison guards, or that Defendants had a policy or custom of assigning white officers to more dangerous shifts than minority officers. However, Plaintiff argues in its brief that Plaintiff's race was a factor in Defendant White's decision to move Plaintiff to a new shift. So stated, Plaintiff has alleged membership in a suspect class and disparate treatment sufficient to state an equal protection claim.

Plaintiff has also stated another basis for an equal protection claim. Plaintiff alleges that the OCF Facility, which is primarily comprised of white officers, was managed differently than other prison facilities that were primarily comprised [*18] of minority officers. Plaintiff alleges that officers at the OCF Facility were intentionally subject to riskier working conditions when the OCF Facility became an "experiment" whereby higher security-level prisoners were accepted at a facility insufficiently equipped to handle such prisoners. Thus, based on these allegations, Plaintiff has alleged membership in a suspect class (white

---

[1] In reverse-discrimination cases, the first element [*16] of the *prima facie* case is that the plaintiff must show evidence of "background circumstances" indicating that the defendant is the "unusual employer who discriminates against the majority." Sutherland v. Mich. Dep't of Treasury, 344 F.3d 603, 614 (6th Cir. 2003).

officers at the OCF Facility) and disparate treatment (riskier working conditions) sufficient to state a claim of equal protection violation. Moreover, Defendants are not subject to qualified immunity for this claim.

**C. Count III - Right to Form and Enter Into Contracts, and Full and Equal Protection of Laws** (*42 U.S.C. § 1981*)

In Count III, Plaintiff alleges that Defendants' discriminatory actions "have the effect of denying the Plaintiff the right to make and enforce contracts, and the full and equal protection of all laws and proceedings for the security of persons and property." (Compl. P 77.) As noted in Section III.B, *supra*, Plaintiff has stated a claim for discrimination based on disparate treatment of white officers at the OCF Facility and assignment to a more dangerous shift, subject to amendment [*19] of the complaint.

Defendants argue that Plaintiff does not have standing to bring a breach of contract contract claim because Plaintiff is not party to an employment contract. In his response, Plaintiff does not assert that he has an employment contract or challenge Defendants' assertion that he has none.

Alternatively, Defendants argue that Plaintiff cannot sue his employer for breach of a collective bargaining agreement between his union and his employer because his complaint is untimely and he has not exhausted the applicable administrative remedies. Plaintiff does not respond to these arguments, except to assert that he is not bringing a breach of contract claim, but a *42 U.S.C. § 1981* claim for discrimination and impairment of the ability to enjoy "all benefits, privileges, terms, and conditions of [a] contractual relationship." *Id.* at *§ 1981(b)*.

Plaintiff's complaint alleges that the "security unit agreement between the corrections' officers union and the State of Michigan indicates that the State will make every effort to provide a place of employment free from known health and safety hazards" and will "take steps to eliminate or minimize, and to avoid aggregating[,] inherent safety [*20] hazards." (Compl. P 28.) Notwithstanding Plaintiff's characterization, the Court agrees with Defendants that the nature of Plaintiff's claim is that his employer has breached the collective bargaining agreement with the union. Plaintiff's complaint asserts that his employer had a duty to Plaintiff under the collective bargaining agreement to provide a safe working environment, and that it did not fulfill this duty. Claiming that Defendants actions have "impaired" Plaintiff's right under *§ 1981* to enjoy benefits [2] that Defendants are contractually obligated to provide is no different from claiming that Defendants have breached the contract.

Defendants argue that a lawsuit by Plaintiff against his employer alleging violation of a collective bargaining agreement is subject to the Labor Management Relations Act, *29 U.S.C. §§ 141, et seq.* ("LMRA"). "It has long been established that an individual employee may bring suit against his employer [*21] for breach of a collective bargaining agreement." *DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 165, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983)*. Defendants argue that, because the LMRA applies, Plaintiff is subject to the sixth-month statute of limitations in the LMRA. [3] In *DelCostello,* the Supreme Court held claims brought by employees under the LMRA are subject to a sixth-month statute of limitations, as set forth in *29 U.S.C. § 160(b)*. *Id. at 172*. The factual basis for Plaintiff's claim are changes to the OCF Facility leading up to injuries on August 9, 2006. Plaintiff did not file his complaint until August 29, 2008, over two years after the changes and his injuries. Plaintiff does not respond to

---

[2] The Court notes that other rights under *§ 1981* are not at issue in the instant case; this is not a case where Plaintiff has alleged facts indicating impairment of rights to "mak[e], perform[], modif[y], or terminat[e]" a contract. *42 U.S.C. § 1981(b)*.

[3] Defendants also assert that Plaintiff has not exhausted his remedies under the collective bargaining agreement; however, Defendants offer no evidence of an exhaustion requirement in the collective bargaining agreement.

Defendants' argument regarding the statute of limitations or contend that his claim should be subject to an exception to the statute of limitations.

However, Plaintiff brought his action pursuant to § 1981, not the LMRA. Defendants assert that the LMRA is the exclusive means to sue an employer [*22] for breach of a collective bargaining agreement, citing Section 301 of the LMRA, 29 U.S.C. § 185. Section 301 does not specify that the LMRA is exclusive of other federal remedies. Defendants offer no authority indicating that the LMRA preempts other federal remedies, such as a cause of action under § 1981, or that the statute of limitations under the LMRA should apply to actions under § 1981. For the foregoing reasons, the Court finds that Plaintiff has stated a claim of discrimination under § 1981. Moreover, Defendants are not subject to qualified immunity with respect to this claim.

### D. Count IV - Gross Negligence

Defendants argue that they are immune from liability for Plaintiff's state law gross negligence claim. "Highest executive officials" qualify for absolute immunity for acts within their respective authority under subsection (5) of the Michigan governmental immunity statute, Mich. Comp. Laws § 691.1407. *See* Ross v. Consumers Power Co., 420 Mich. 567, 363 N.W.2d 641, 649 (Mich. 1984). Defendant Caruso, as the director of the MDOC, is a "highest executive official" that qualifies for absolute immunity. Chivas v. Koehler, 182 Mich. App. 467, 453 N.W.2d 264, 266 (Mich. App. 1990). Plaintiff alleges that Defendant [*23] MacMeekin was the regional prison authority of the MDOC with responsibility over the OCF Facility. According to *Chivas,* "[a]n executive should have broad-based jurisdiction or extensive authority similar to that of a judge or legislator" to have absolute immunity. Id. at 266. In *Chivas,* the plaintiff complained that the defendants had improperly transferred high-security prisoners to a low-security prison. Id. at 265. The court found that one defendant, a deputy director of the MDOC, was a "highest executive official" because no one else reviewed his decisions to effect the transfers, whereas another defendant, a prison superintendent, was found not to be a highest executive official because he had jurisdiction over only prison. Id. at 266. Without additional evidence regarding the scope of Defendant MacMeekin's jurisdiction at the time of the incidents in question, the Court is unable to determine whether he was a "highest executive official" subject to absolute immunity for the actions set forth in the complaint.

Defendants also argue that subsection (2) of the Michigan governmental immunity statute applies to Plaintiff's claim of gross negligence. This section provides tort immunity [*24] for officers and employees of a governmental agency if all of the following are met:
   (a) The officer, employee, . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.
   (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

   (c) The officer's, employee's . . . conduct does not amount to gross negligence that is the *proximate cause* of the injury or damage.

Mich. Comp. Laws § 691.1407(2) (West 2009) (emphasis added). Plaintiff alleges that Defendants were acting within the scope of their employment. (Compl. P 4.) The Michigan Courts of Appeal have held that the "operation and maintenance" of a jail is a "governmental function" giving rise to immunity from tort liability. Wojtasinski v. City of Saginaw, 74 Mich. App. 476, 254 N.W.2d 71, 72 (Mich. App. 1977). Plaintiff challenges only the issue of proximate cause in subsection (2)(c). "Proximate cause" under this section means "the one most immediate, efficient, and direct cause preceding injury." Robinson v. City of Detroit, 462 Mich. 439, 613 N.W.2d 307, 311 (Mich. 2000). In *Robinson,* the defendants were police officers that

Case 2:22-cv-10470-VAR-EAS   ECF No. 8-5, PageID.82   Filed 05/09/22   Page 9 of 10

Page 9 of 10
2009 U.S. Dist. LEXIS 29098, *24

were involved in the pursuit of an underage driver. The court concluded [*25] that the reckless conduct of the fleeing driver was the proximate cause of injuries to his passengers, not the actions of the officers. Id. at 319. Similarly, Plaintiff's injuries were most directly and immediately caused by the rioting inmates at the OCF Facility; none of the actions of Defendants can be said to be the "one most immediate" or "direct" cause of Plaintiff's injuries. Thus, Defendants are immune from tort liability with respect to Plaintiff's state law claim of gross negligence.

**E. Count V - First Amendment Retaliation**

For a claim of First Amendment retaliation a plaintiff must show that (1) he was engaged in constitutionally protected speech, (2) he was subjected to an adverse action or was deprived of some benefit, and (3) the protected speech was a substantial or motivating factor in the adverse action. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003).

In determining whether a public employee's speech is protected under the First Amendment, a court first must determine whether it may be "fairly characterized as constituting speech on a matter of public concern." Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). Whether a plaintiff's speech touches upon [*26] a matter of public concern is a question of law. Banks, 330 F.3d at 892. If a plaintiff's speech is not a matter of public concern, no further inquiry is necessary. Id. at 892-93.

Speech addressing a matter of public concern is speech relating to "any matter of political, social, or other concern to the community." Connick, 461 U.S. at 146. Speech is a matter of public concern where "it involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." Farhat v. Jopke, 370 F.3d 580, 590 (6th Cir. 2004). "Such matters of public concern are to be contrasted with internal personnel disputes or complaints about the employer's performance." Brandenburg v. Hous. Auth. of Irvine, 253 F.3d 891, 898 (6th Cir. 2001).

Plaintiff alleges that he complained about the safety and security of the prison. Plaintiff also alleges that he complained about Defendant White's activites:

> . . . which included but were not limited to, White's frequent visits to local "gentleman's clubs," seduction of local women, favoritism towards African American inmates as opposed to Caucasian corrections officers, socialization [*27] with female corrections officers, and his contacts with the Ironwood Public Safety regarding domestic disputes of which he was involved.

(Compl. P 44.) Plaintiff contends that Defendants retaliated against him for speaking out about security concerns at the OCF Facility and Defendant White's activities. Plaintiff appears to allege that Defendant White purposefully moved Plaintiff to a more dangerous shift and instructed inmates to harm Plaintiff in retaliation for this conduct.

In a case similar to the instant case, the Sixth Circuit examined the speech of a prison corrections officer complaining about the safety of a prison facility. Albert v. Mitchell, 42 F. App'x 691 (6th Cir. 2007) (unpublished). In that case, the plaintiff contended that his employer retaliated against him for his complaints that the prison officials did not provide assistance in emergency situations. Id. at 693. The Court upheld dismissal for failure to state a claim, noting that "[n]owhere [*28] in [plaintiff's allegations] is there mention that this failure may lead to the escape of prisoners, which might in turn be dangerous to the public. Only the personal safety of the correctional officers in question is at issue." Id. at 693-94. The Court finds the reasoning in Albert to be persuasive. Plaintiff does not allege that there is any connection between the safety and security measures taken at the prison and public welfare; Plaintiff's allegations

regarding prison safety relate solely to the welfare of the prison employees and inmates. (*See* Compl. P 25.) Thus, as a matter of law, Plaintiff's complaints regarding the level of safety at the prison for prison employees and inmates are not "matters of public concern" and are not protected speech under First Amendment retaliation analysis.

Similarly, Plaintiff's complaints regarding Defendant White's personal indiscretions and inappropriate workplace conduct that Plaintiff alleges affected the "reputation, morale, and level of service provided by the institution" are not matters of public concern. (Compl. P 45.) *See* Albert, 42 F. App'x at 693 (finding that an affair between two corrections officers is not a matter of public concern [*29] due to a lack of "nexus" to "any detriment to the public welfare"). Defendant White's alleged activities, while they may appeal to a prurient interest, are not matters of public concern.

Plaintiff asserts in his brief that his speech regarding the operation of the prison and the "corruption" of the prison officials is a matter of public concern because it involves "ensuring that public organizations are being operated in accordance with the law," citing Marohnic v. Walker, 800 F.2d 613, 616 (6th Cir. 1986). However, Plaintiff's complaint does not allege any corruption or other illegal activity in the operation of the OCF Facility that would be a matter of public concern, such as the misuse or theft of public funds that was exposed by the plaintiff in Marohnic. For the foregoing reasons, Plaintiff's complaint fails to state a claim for retaliation under the First Amendment.

### F. Count VI - Constitutional Violations of MDOC.

Count VI is asserted only against MDOC and does not assert a separate legal basis for liability. The Court will dismiss Count VI because MDOC will be dismissed as a party.

### IV.

Plaintiff moved for leave to amend the complaint during oral argument. Because "[t]he Could should [*30] freely give leave [to amend] where justice so requires," Fed. R. Civ. P. 15(a)(2), and because several of Plaintiff's claims fail due to failure to allege specific factual allegations, the Court will grant Plaintiff leave to amend his complaint.

Dated: April 2, 2009

/s/ Robert Holmes Bell

ROBERT HOLMES BELL

UNITED STATES DISTRICT JUDGE

**End of Document**