## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DANA O'NEAL,

       Plaintiff,                             Case No. 22-cv-10470

v.                                        Hon. Victoria A. Roberts

52ND DISTRICT COURT and
JUDGE JOSEPH G. FABRIZIO,
in his personal and official capacity,

       Defendants.

_____/

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Aaron C. Thomas (P55114) |
| Grant M. Vlahopoulos (P85633) | Oakland County Deputy Corporation Counsel |
| Hurwitz Law PLLC | Nicole B. Tabin (P73685) |
| Attorneys for Plaintiff | Oakland County Corporation Counsel Litigator |
| 617 Detroit St. STE 125 | Attorneys for Defendants |
| Ann Arbor, MI 48104 | 1200 N. Telegraph Road, Dept. 419 |
| (844) 487-9489 | Pontiac, MI 48341-0419 |
| Noah@hurwitzlaw.com | (248) 975-9616 |
| Grant@hurwitzlaw.com | (248) 858-1475 |
| | thomasa@oakgov.com |
| | tabinn@oakgov.com |

_____/

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

1.     **Plaintiff concedes that "her First Amendment Retaliation claim against the 52nd District Court and Chief Judge Fabrizio in his official capacity can be dismissed."** (ECF No. 13, Page ID. 225). These parties should therefore be dismissed from Count I on that basis.

2.     **Plaintiff makes several misleading and inflammatory statements in her response brief that should be discounted outright because they are legally incorrect, conclusory, and/or unsupported by the actual factual allegations made in her Complaint.** For example, Plaintiff claims she "cooperated with the JTC to the dismay of Judge Fabrizio," and that there was an "outpouring of public support for Plaintiff once news of her termination spread." (ECF No. 13 Page ID. 202). However, there are no facts alleged in the Complaint to support this, and nor should there be since such allegations are untrue.

Similarly, Plaintiff states that "Human Resources told Chief Judge Fabrizio to escalate its report to the JTC…", (ECF No. 13 Page ID. 220), but this is also not supported by the factual allegations in the Complaint. Indeed, for Oakland County Human Resources to "tell" or otherwise compel a chief judge to do anything regarding court personnel matters is contrary to MCR 8.110, which vests control and authority over district court operations in the chief judge.

Finally, several allegations in Plaintiff's brief and complaint should be discounted because they are conclusory. Although a complaint need not contain

"detailed factual allegations," it does require more than "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The conclusory allegations in Plaintiff's brief and complaint such as "Plaintiff's speech brought to light the wrongdoings or a breach of the public trust in 52nd District Court and in Chief Judge Fabrizio," and "Plaintiff did not, nor could she, gain any personal advantages by asserting her speech," should be discounted because they do not assist in nudging claims towards plausibility. (ECF No.13, Page ID. 207). Importantly,

> A plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law. Instead, the sufficiency of a complaint turns on its 'factual content,' requiring the plaintiff to plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing. The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct. [*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).]

Here, for the reasons articulated in the Defendants' main brief, a common sense reading of Plaintiff's complaint does not establish a plausible claim against the 52nd District Court or Judge Fabrizio. The complaint should be dismissed in the entirety.

**3. Plaintiff's "speech" at issue was made as Court Administrator, not as a private citizen.** Plaintiff maintains that she "spoke as a private citizen" when she "emailed Defendant Fabrizio detailed examples of Judge Hartig's mistreatment of Plaintiff and other governmental employees," (ECF No 9, Page ID. 101), and later – after Judge Fabrizio formally requested that the JTC investigate the matter – when

she emailed the JTC "for updates" and "provided the JTC with names of individuals to be interviewed and assisted with the logistical details for the JTC interviews." (ECF No. 9, Page ID. 105-106).

To support this assertion, Plaintiff claims that her job description as Court Administrator "is facially void of any references to 'investigate', 'report,' or 'discipline' of employees." (ECF No. 13 Page ID. 217). Plaintiff also appears to claim that her duties as Court Administrator were limited to "creating reports…on revenues and expenditures." (ECF No 3, Page ID. 218). Plaintiff's claim that her duties were limited to financial reporting is inconsistent with the factual allegations made earlier in her complaint and brief, where she states that her duties included "leading efforts to recruit and retain staff…improving operations and building securities, increasing staff morale, [and] remedying labor shortages…." (ECF No. 13, Page ID. 204). Moreover, a practical reading of Plaintiff's job description supports that she absolutely "spoke" as Court Administrator. Again, under the *Twombly/Iqbal* standard, the plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct. As argued in Defendant's main brief, the only reason Plaintiff communicated with Judge Fabrizio as she did and "sought updates" and "assisted with" the JTC interviews was because of her role as Court Administrator.

**4.     Plaintiff offers no facts to plausibly show the "causation" element of a prima facie First Amendment retaliation or whistleblower claim**. Plaintiff suggests that it is premature to determine the causation element at this stage of the case because a "defendant's motivation for taking action against the plaintiff is usually a matter best suited for the jury," quoting *Buddenberg v Weisdack*, 939 F.3d 732, 741 (6th Cir 2019) (citing *Paige v. Coyner*, 614 F.3d 273, 282 (6th Cir.2010)). However, in both *Buddenberg* and *Paige*, the Sixth Circuit was able to identify allegations in the respective complaints that would allow a jury to find that the defendants in those cases were motivated by a retaliatory motive. The same is not true here. See, *Williams v. Barberton Sch. Dist. Bd. of Educ.*, No. 5:11CV2514, 2012 U.S. Dist. LEXIS 157966 (N.D. Ohio Sep. 27, 2012) (recommending dismissal of a free-speech retaliation case on a Rule 12(b)(6) motion) (**Exhibit 1**).

Here, Plaintiff was terminated on December 10, 2021, which is over a year after her last allegedly protected act of coordinating staff interviews for the JTC investigation. This lapse in time between the protected activity and the adverse employment action is too attenuated to establish causation. Regardless, temporal proximity alone – which is not the case here– is rarely, if ever, sufficient to establish causation. There generally must be other indicia of retaliatory conduct. *Sensabaugh v. Halliburton*, 937 F.3d 621, 630 (6th Cir. 2019)

But Plaintiff has not plausibly alleged any indicia of retaliatory conduct either. Instead, Plaintiff points to the Court's adoption of Local Administrative Order (LAO) 2020-04 around the same time that the JTC initiated its investigation. Plaintiff claims that this "implies Defendants sought to conceal Judge Hartig's behavior from the public in advance of a formal JTC investigation." (ECF No. 13, Page ID. 223).  However, Plaintiff's suggestion that the adoption of the LAO, which concerns public access of case records, would impact the outcome of the JTC investigation is not logical since the LAO does not apply to the JTC, and in any event JTC proceedings are also non-public and confidential under MCR 9.26. Moreover, attached is an email establishing that the Court's adoption of the LAO was required by SCAO, that the LAO does not substantively deviate from the model LAO provided by SCAO, and that Defendants were simply complying with SCAO's directive. (**Exhibit 2**.)  Again, under the *Twombly/Iqbal* standard, the plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct. Plaintiff's reliance on the LAO is therefore misplaced.

The bottom line is that Plaintiff's complaint shows neither temporal proximity nor any other indica of evidence to *plausibly* suggest that the reason for Plaintiff's termination was because, *more than one year earlier*, she emailed Judge Fabrizio about Judge Hartig and then – after Judge Fabrizio submitted a request for an

investigation to the JTC regarding the matter – sought updates and coordinated interviews for that JTC investigation. Plaintiff has stated no plausible claim against Defendants and her complaint must be dismissed.

Respectfully submitted,

OAKLAND COUNTY CORPORATION COUNSEL

*/s/Nicole B. Tabin*
Nicole B. Tabin (P73685)
Corporation Counsel Litigator
Attorney for Defendants
1200 N. Telegraph Road, Dept. 419
Pontiac, MI 48341-0419
(248) 858-1475; tabinn@oakgov.com

Dated: July 28, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2022, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF System which will send notification of such filing to the attorney(s) of record, and I hereby certify that I have mailed by United States Postal Service the same to the following non-ECF participants: None.

Respectfully submitted,

OAKLAND COUNTY CORPORATION COUNSEL

*/s/ Nicole B. Tabin*
Nicole B. Tabin (P73685)
Corporation Counsel Litigator
Attorney for Defendants
1200 N. Telegraph Road, Dept. 419
Pontiac, MI 48341-0419
(248) 858-1475; tabinn@oakgov.com

Dated: July 28, 2022

# EXHIBIT 1

## *Williams v. Barberton Sch. Dist. Bd. of Educ.*

United States District Court for the Northern District of Ohio, Eastern Division

September 27, 2012, Decided; September 27, 2012, Filed

CASE NO. 5:11CV2514

**Reporter**
2012 U.S. Dist. LEXIS 157966 *; 2012 WL 5290303

KELLI WILLIAMS, Plaintiff, v. BARBERTON SCHOOL DISTRICT BOARD OF EDUCATION, Defendant.

**Subsequent History:** Motion granted by *Williams v. Barberton City Sch. Dist. Bd. of Educ., 2012 U.S. Dist. LEXIS 171101 (N.D. Ohio, Nov. 30, 2012)*

**Prior History:** *Williams v. Barberton City Sch. Dist. Bd. of Educ., 2011 U.S. Dist. LEXIS 151472 (N.D. Ohio, Dec. 7, 2011)*

**Counsel:** [*1] For Kelli Williams, Plaintiff: Michael T. Conway, LEAD ATTORNEY, Brunswick, OH.

For Barberton City School District Board of Education, Defendant: Patrick S. Vrobel, Matthew John Markling, McGown, Markling & Whalen, Akron, OH.

**Judges:** GEORGE J. LIMBERT, UNITED STATES MAGISTRATE JUDGE. JUDGE DAVID A. DOWD.

**Opinion by:** GEORGE J. LIMBERT

## Opinion

Report and Recommendation

This matter is before the Court[1] on the motion for judgment on the pleadings filed on behalf of Defendant, Barberton School District Board of Education on May 11, 2012. ECF Dkt. #23. With leave of Court, Plaintiff, Kelli Williams filed her opposition brief on July 11, 2012. ECF Dkt. #28. With leave of court, Defendant filed its reply brief was filed on August 8, 2012. ECF Dkt. #30.

## I. Standard of Review

*Federal Civil Rule 12(c)* provides that "[a]fter the pleadings are closed — but early enough not to delay the trial — a party may move for judgment on the pleadings." A court reviews a *Rule 12(c)* motion for judgment on the pleadings under the same standard as a motion to dismiss. *Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010)*.

In scrutinizing [*2] a complaint under *Rule 12(b)(6)*, this Court is required to "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Dubay v. Wells, 506 F.3d 422, 426 (6th Cir.2007)*. Although a complaint need not contain

---

[1] On November 11, 2011, this matter was referred to the undersigned for general pretrial supervision.

2012 U.S. Dist. LEXIS 157966, *2

"detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)*.

Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)*. And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir.2009)* (quoting *Iqbal, 129 S.Ct. at 1949*).

## II. Facts

Defendant is a political subdivision and city school board, which administers a federal Head Start educational program for  [*3] low income students. Compl. at ¶4, Am. Answer at ¶2. Head Start is a federal grant program aimed at providing comprehensive child development services for economically disadvantaged children and families with a special focus on helping preschoolers develop early reading and math skills. Compl. at ¶3. Plaintiff served as a "parent coordinator" for the Head Start program between November 2, 1998 and June 9, 2011. *Id.* at ¶4.

At some point during Plaintiff's employment that is not identified in the Complaint, the Head Start program director implemented a finger print and background check security policy that Plaintiff alleges "prevented parents from participating in the program with their children as the federal grant required." *Id.* at ¶8. Plaintiff viewed this policy as not authorized by law, and made complaints to Defendant that the program director was violating the terms of the Head Start grant. *Id.* at ¶8.

Plaintiff alleges that, after she made complaints about the security policy, the program director subjected her to harassment, performance scrutiny, and an assault and battery. *Id.* at ¶¶8, 11 (alleging the program director attempted to build a false disciplinary record), 13 (alleging  [*4] that Plaintiff was given a spurious performance review on May 25, 2011 by the program director in order to keep her from qualifying for reemployment). Plaintiff contends that the false disciplinary record was created to justify a planned retaliatory termination of Plaintiff's employment. *Id.* at ¶11.

In January of 2010, Plaintiff observed the program director "drag[ ] a child by her arm on the floor as a form of discipline" in violation of the School Board Child Restraint Policy. *Id.* at ¶10. She complained to the Superintendent and she was ignored. Plaintiff further alleges that, in August of 2010, Defendant falsely accused the Plaintiff of failing to report child abuse/neglect based upon the incident that occurred in January of 2010. The accusation was the subject of a *Loudermill* hearing[2] and Plaintiff was ultimately cleared of any misconduct. *Id.* at ¶12.

On June 6, 2011, the Board suspended Plaintiff's contract pursuant to Ohio Rev. Code §3319.172 as part of an "economic reduction in force" affecting the entire school district. Compl. at ¶5, Am. Answer at Exhibit A. On October 21, 2011, Plaintiff filed a complaint in state court alleging a deprivation of her "*First Amendment* Rights related to the petition and freedom of expression guarantees by the *First Amendment*

---

[2] The term "*Loudermill* hearing" refers to the process a government entity must afford to a public employee prior to disciplining that employee. See *Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L. Ed. 2d 494 (1985)*. Such a hearing is held to determine "whether there are reasonable grounds to believe that the charges against the  [*5] employee are true and support the proposed action." *Id. at 546, 105 S.Ct. 1487*.

*to the U.S. Constitution* and the *14th Amendment Due Process*[3] *Clause* all actionable under *42 USC 1983 [sic]*." Compl. ¶15. On November 18, 2011, the Board removed the case to the United State District Court for the Northern District of Ohio. See Notice of Removal, Doc. 1. On March 15, 2012, Defendant filed its amended answer to the Complaint. See Am. Answer, Doc. 18.

## III. Law

Plaintiff brings this action under *Section 1983*, alleging deprivations of her rights under the "*First Amendment* [. . .] of the U.S. Constitution and the *14th Amendment Due Process Clause*." [*6] Compl. at ¶15. *Section 1983* is the procedural vehicle through which a plaintiff may "vindicate the deprivation of a right secured by the Constitution or laws of the United States caused by a person acting under color of state law." *Jenkins v. Rock Hill Local Sch. Dist., 513 F.3d 580, 585 (2008)*. To survive a motion to dismiss a claim under *42 U.S.C. § 1983*, the plaintiff must allege two elements: (1) the defendant acted under color of state law; and (2) the defendant's conduct deprived the plaintiff of rights secured under federal law. *Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir.1998)*.

In free-speech retaliation cases arising in the employment context, the Court must undertake three inquiries:

(1) Was the individual involved in "constitutionally protected" activity? *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)*.

(2) Would the employer's conduct discourage individuals of "ordinary firmness" from continuing to do what they were doing? *Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir.1998)*.

(3) Was the employee's exercise of constitutionally protected rights "a motivating factor" behind the employer's conduct? *Mt. Healthy, 429 U.S. at 287, 97 S.Ct. 568*.

The [*7] claimant must establish each prong of the inquiry to prevail.

The first prong of the inquiry is further divided when the individual asserting his or her *First Amendment* rights is a public employee. Three Supreme Court cases define the contours of the free-speech rights of public employees. The *First Amendment* protects the speech of employees only when it involves "matters of public concern." *Connick v. Myers, 461 U.S. 138, 143, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)*. In *Connick*, an assistant district attorney, after learning that her supervisor planned to transfer her, solicited information from her colleagues about the office's transfer policy, office morale, and whether supervisors had pressured anyone to participate in political campaigning. *Id. at 141, 103 S.Ct. 1684*. When the supervisor fired her for refusing to accept the transfer, she sued, alleging retaliation against protected speech, that is, her initiation of the survey. *Id.* In rejecting her claim, the Court explained that not all employee speech is protected, only speech that "fairly [may be] considered as relating to" issues "of political, social, or other concern to the community." *Id. at 146, 103 S.Ct. 1684*. When, by contrast, [*8] an employee's speech does not relate to a matter of public concern, public officials enjoy "wide latitude" in responding to it without "intrusive oversight by the judiciary in the name of the *First Amendment*." *Id.*

---

[3] Plaintiff concedes in her opposition brief that her sole claim is a First Amendment retaliation claim, and that she does not assert a Fourteenth Amendment Due Process Claim.

If the employee establishes that her speech touches "matters of public concern," a balancing test determines the relative interests of the public employee and employer. *Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)*. In *Pickering*, the Court considered the claim of a high school teacher whom the principal fired after the teacher wrote a letter to the local newspaper, criticizing the school board's budgetary decisions. *Id. at 564, 88 S.Ct. 1731*. In resolving the claim, the Court "balance[d] ... the interests of the teacher, as a citizen, in commenting upon matters of public concern" against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id. at 568, 88 S.Ct. 1731*. Reasoning that there was no relationship between the contents of the letter and the "proper performance of [the teacher's] daily duties in the classroom," the Court ruled for the teacher, concluding [*9] that the school board's interests did not outweigh his desire to "contribute to public debate" like any other citizen. *Id. at 572-73, 88 S.Ct. 1731*.

In the final case of the trilogy, a prosecutor reviewed a private complaint that a police officer's affidavit used to obtain a search warrant contained several misrepresentations. *Garcetti v. Ceballos, 547 U.S. 410, 413-414, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)*. After confirming that the affidavit contained serious falsehoods, the prosecutor wrote a memo to his superiors about his findings, recommended that the office dismiss the case and eventually testified to the same effect at a hearing to suppress the evidence discovered during the search. *Id. at 414-15, 126 S.Ct. 1951*. In the aftermath of these and other actions, the prosecutor claimed that the office retaliated against him by transferring him to another courthouse and by denying him a promotion. *Id. at 415, 126 S.Ct. 1951*.

In rejecting his free-speech claim, the Court did not deny that the prosecutor's speech related to a matter of "public concern" under *Connick*, and it did not take on the lower court's reasoning that *Pickering* balancing favored the employee. It instead concluded [*10] that the *First Amendment* did not apply. "The controlling factor," the Court reasoned, "is that his expressions were made pursuant to his duties as a calendar deputy," making the relevant speaker the government entity, not the individual. *Id. at 421, 126 S.Ct. 1951* (emphasis added). "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for *First Amendment* purposes, and the Constitution does not insulate their communications from employer discipline." *Id*.

Accordingly, a *First Amendment* claimant must satisfy each of these requirements to fulfill the first prong of the three-part test: the *Connick* "matter of public concern" requirement, the *Pickering* "balancing" requirement and the *Garcetti* "pursuant to" requirement. Although Defendant asserts that Plaintiff cannot establish her claim under any of these tests, Defendant only challenges the "pursuant to" requirement of *Garcetti* in its motion for judgment on the pleadings.

## IV. Analysis

### A. The *Garcetti* requirement

In *Garcetti*, the Supreme Court recognized that citizens who enter government service "must accept certain limitations on [their] freedoms," including limitations [*11] on the scope of their *First Amendment* rights. *547 U.S. at 418, 126 S.Ct. 1951*. Observing that public employees "do not surrender all their *First Amendment* rights by reason of their employment," the Court held that the interest of a public employee "in commenting on matters of public concern" must be balanced against the interest of governmental employers "in promoting the efficiency of the public services it performs through its employees." *Id. at 417, 126 S.Ct. 1951*.

2012 U.S. Dist. LEXIS 157966, *11

For a public employee's statements to receive *First Amendment* protection, the public employee must speak "as a citizen" and "address[ ] matters of public concern." *Weisbarth v. Geauga Park Dist., 499 F.3d 538, 542 (6th Cir.2007)*. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for *First Amendment* purposes." *Garcetti, 547 U.S. at 421, 126 S.Ct. 1951*. Under *Garcetti*, "even employee speech addressing a matter of public concern is not protected if made pursuant to the employee's official duties." *Weisbarth, 499 F.3d at 545*. Thus, in reviewing a public employee's statement under *Garcetti*, the Court must consider both its content and context — including to [*12] whom the statement was made — to determine whether the plaintiff made the statement pursuant to her individual duties. *Id.*; *Haynes v. City of Circleville, 474 F.3d 357, 362 (6th Cir.2007)*.

Moreover, speech by a public employee made pursuant to ad hoc or de facto duties not appearing in any written job description is nevertheless not protected if it "owes its existence to [the speaker's] professional responsibilities." *Weisbarth, 499 F.3d at 544* (quoting *Garcetti, 547 U.S. at 421, 126 S.Ct. 1951*). In *Weisbarth*, the Sixth Circuit concluded that a park ranger's statements about morale and performance issues to an outside consultant hired by the ranger department to assess these matters were made pursuant to her official duties, even though participating in the interview was an ad hoc duty not described in the ranger's official job description. *Id. at 543-44*. Likewise, in *Haynes* the Sixth Circuit found that a police officer's memo to his superior officer expressing discontent about the financial cutbacks and changes to the canine-training program that he directed was not protected speech. *See 474 F.3d at 365*. The memo suggested that the cuts would open the police department to allegations [*13] of "negligence," "deliberate indifference," and "failure to train," *Id. at 360*, but the plaintiff officer conceded that the new program complied with Ohio law. *Id. at 365*. In concluding that the plaintiff made these statements as a public employee rather than a private citizen, the *Haynes* Court cited the officer's involvement with the canine training program and the fact that he made the statements "solely to his superior." *Id. at 364*. The memo, therefore, communicated "nothing more than 'the quintessential employee beef: management has acted incompetently.'" *Id. at 365* (quoting *Barnes v. McDowell, 848 F.2d 725, 735 (6th Cir.1988))*.

Defendant argues that Plaintiff's complaints about the fingerprint requirement and the child restraint policy "owe their existence to Plaintiff's responsibilities as the parent coordinator and employee for the Barberton Head Start program." ECF Dkt. #23 at p. 14. Defendant further argues that as the parent coordinator and an employee of the Head Start program, Plaintiff would have been responsible for maintaining compliance with Head Start guidelines. *Id.* Moreover, Defendant contends that Plaintiff, as a school district employee, is legally required to report [*14] suspect child abuse and neglect, citing Ohio Revised Code 2151.421. *Id.* As a consequence, Defendant reasons that the speech at issue was made from the perspective of a public employee, rather than a concerned private citizen. Furthermore, because Plaintiff statements were essentially internal complaints directed to supervisors rather than the general public, her complaints were asserted pursuant to her position as the parent coordinator of the Head Start program.

In her opposition brief, Plaintiff argues that the Head Start program is federally funded, and, as a consequence, her termination as a result of a "reduction in force" is an obvious pretext for *First Amendment* retaliation. Plaintiff further argues that "given [Defendant's] excuse offered for termination gives rise to more questions that it seeks to provide answers to, [Defendant's] motion should be OVERRULED outright." ECF Dkt. #28 at p. 6. However, Defendant's motion is predicated solely upon the *Garcetti* "pursuant to" requirement, and Defendant's motivation for terminating Plaintiff's employment is not relevant to that specific inquiry. Next, Plaintiff dedicates a portion of her opposition brief to the argument that her speech [*15] touched upon a matter of public concern. As stated previously,

2012 U.S. Dist. LEXIS 157966, *15

Defendant has conceded solely for the purpose of this motion the first two prongs of the *Connick/Pickering/Garcetti* inquiry.

At page eleven of her brief, Plaintiff addresses the *Garcetti* inquiry. Plaintiff argues that "misconduct in the application of a federal educational grant and abuse of children" are "topics this Court could hardly hold are not in the public interest" and "in fact the speech concerning those issues does not derive from a requirement to speak on any job description or list of duties." ECF Dkt. #28 at p. 11. She further argues that she "IS NOT the Head Start program manager with duties to report [Defendant's] misconduct to anyone, and as for a civil duty under Ohio R.C. 2151.421 regarding a state law duty to report child abuse, there is no case that is cited by the Defendant that shows an independent state law duty to make a report to law enforcement about witnessing child abuse is transformed into a job description that may be used as a immunized basis for retaliation against the Plaintiff when she decided to work for the government Defendant." *Id.* (emphasis in original).

Having considered the relevant [*16] case law and the particular facts alleged in the complaint, the undersigned recommends that the Court find that Plaintiff's speech was made pursuant to her official duties as parent coordinator of the Head Start program. Plaintiff contends that only the program director had a duty to report misconduct and violations of the Head Start rules and regulations to Defendant, and, as a result, Plaintiff's speech was undertaken as a private citizen. In fact, in her opposition brief, Plaintiff essentially concedes that her speech was undertaken pursuant to her official duties. She acknowledges that the parties to the Head Start program employment contract are bound by Head Start's rules and regulations. Next, she cites *45 C.F.R. §1304.3(a)(6)(i)(A)* and *§1304.61* for the proposition that grantees under Head Start must ensure that in the administration of the program there is no threat to the health, safety or civil rights of children or staff and deficiencies found in this regard may result in the suspension of grant funding. Furthermore, even assuming that Plaintiff's speech was not undertaken pursuant to a written job description, the Sixth Circuit held in *Weisbarth* that speech by a public employee [*17] made pursuant to ad hoc or de facto duties not appearing in any written job description is nevertheless not protected if it "owes its existence to [the speaker's] professional responsibilities." *Weisbarth, 499 F.3d at 544.*

The facts of this case most closely resemble the facts in *Haynes, supra*, wherein the Court cited the officer's involvement with the canine training program and the fact that he made the statements "solely to his superior." *Id. at 364.* As in *Haynes*, the speech at issue in this case communicated "nothing more than 'the quintessential employee beef: management has acted incompetently.[4]'" *Id. at 365* (quoting *Barnes v. McDowell, 848 F.2d 725, 735 (6th Cir.1988)).* Under *Garcetti*, "even employee speech addressing a matter of public concern is not protected if made pursuant to the employee's official duties." *Weisbarth, 499 F.3d at 545.*

Earlier this week, the Sixth Circuit addressed the *Garcetti* [*18] requirement in *Handy-Clay v. City of Memphis, Tenn., 695 F.3d 531, 2012 WL 4352228 (2012).* Handy-Clay was the public record coordinator for the city of Memphis. Her duties included ensuring that record requests from the public were routed to the appropriate records custodian and responded to in a timely manner, reviewing the documents released to prevent the disclosure of confidential information, and supporting the recording and transcription of the minutes of the Memphis Charter Commission. She claimed that her employment was terminated in retaliation for various concerns that she raised, which the Sixth Circuit divided into four categories: (1) the completion of her record-production duties; (2) generalized allegations of disparate

---

[4] Paragraph ten of the Complaint reads, in pertinent part, "[The program director] was an unqualified and inept program administrator at all times relevant and Plaintiff's complaints to [Defendant] about her conduct jeopardizing the Head Start program were ignored." ECF Dkt. #1-2 at p. 5.

treatment and "workplace abuse" within the City Attorney's office; (3) allegations related to violations of city policies related to absences, leave, and pay; and (4) allegations of "retaliation" without further definition.

The Sixth Circuit concluded that only her concerns about abuse of the city leave and pay policies were undertaken as a private citizen, rather than a public employee. However, it is the analysis of the first category of [*19] concerns that is relevant to the issue before this Court. Handy-Clay claimed that a change in protocol during her employment created delays in the processing of records requests, and she asserted that an entrenched culture at City Hall led to the concealment of information from the public. The Sixth Circuit provided the following analysis of her speech:

> [I]t is clear under *Garcetti*, as well as our subsequent opinions applying *Garcetti*, that the first category of speech — complaints about obstacles interfering with her ability to produce records — is not protected. Handy-Clay admitted that her primary responsibilities included ensuring that record requests from the public were "routed to the appropriate records custodian and responded to in a timely manner," reviewing the documents released, and "preventing the disclosure of confidential information." Her complaints were directly related to her alleged job responsibilities and, thus, her speech was made in her capacity as an employee and not as a private citizen. See *Garcetti, 547 U.S. at 421* (noting that disposition memo submitted by plaintiff, a deputy district attorney, was written pursuant to his official duty to advise his supervisor [*20] about how to proceed with pending cases); *Fox [v. Traverse City Area Pub. Schs. Bd. of Educ., 605 F.3d 345, 349 (6th Cir.)*, cert. denied, ___ U.S. ___, 131 S. Ct. 643, 178 L. Ed. 2d 478 (2010)]*(determining that teacher's complaints about class size owed their existence to her professional responsibilities); *Haynes, 474 F.3d at 364-65* (holding that police officer's memorandum criticizing changes to canine program was written pursuant to official duties as canine handler).

*695 F.3d 531, Id. at *6*. The same is true in the case *sub judice*.

Accordingly, the undersigned recommends that Defendant's motion for judgment on the pleadings should be granted based upon Plaintiff's failure to fulfill the *Garcetti* requirement of the public employee three-part test. However, assuming arguendo that the Court finds that the speech at issue was undertaken by Plaintiff as a private citizen, rather than a public employee, Defendant also contends that judgment must be entered its favor on the second and third inquiries of the free-speech retaliation test.

## B. Adverse employment action

First, Defendant contends that the allegations of harassment, battery, and the creation of a false disciplinary record were all undertaken, according [*21] to the Complaint, by the program director who is not a named defendant in this case. Defendant writes, "Specifically, the Complaint does not contain any factual allegations which would connect the actions of the program director to an official policy, custom, regulation, or decision officially adopted or promulgated by the Board." ECF Dkt. #23 at p. 17. Defendant correctly asserts that the Complaint contains no allegations to impose municipal liability on the school district based upon the actions of the program director.

In her opposition brief, Plaintiff asserts for the first time the municipal liability theory or ratification predicated upon *City of St. Louis v. Praprotnik, 485 U.S. 112, 121, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)*("[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'") However, that theory is not articulated in the Complaint. As a

2012 U.S. Dist. LEXIS 157966, *21

consequence, to the extent that Plaintiff has failed to allege any connection between the actions of the program director and Defendant, Plaintiff fails to state a claim [*22] upon which relief may be granted with respect to those specific actions.

Next, Defendant argues that the *Loudermill* hearing in this case would not chill a person of ordinary firmness from continuing constitutionally protected activity "as Plaintiff admits that she suffered no discipline from this conduct." ECF Dkt.#23 at p. 18. The term "adverse action" has traditionally referred to "actions such as 'discharge, demotions, refusal to [h]ire, nonrenewal of contracts, and failure to promote.'" *Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir.2010)* (quoting *Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir.1999)* (en banc)). The Sixth Circuit has noted that less drastic employment actions that are de minimis, inconsequential, or trivial do not implicate the *First Amendment*. See *Brown v. Crowley, 312 F.3d 782, 801 (6th Cir.2002)* (citing *Thaddeus—X at 398 (6th Cir.1999)*). However, even trivial employment actions, taken in the aggregate, can provide a basis for a *Section 1983* claim for violating a government employee's *First Amendment* rights. *Vereecke v. Huron Valley Sch. Dist., 609 F.3d 392, 399 (6th Cir.2010)*; *Akins v. Fulton Cnty., 420 F.3d 1293, 1301-02 (11th Cir.2005)*.

Here, [*23] Plaintiff was vindicated at the *Loudermill* hearing, and, as a consequence, received no discipline. Because she was not disciplined, and the *Loudermill* hearing at issue was not one in a series of numerous other inconsequential employment actions by Defendant, the undersigned recommends that the Court find that the *Loudermill* hearing in this case does not constitute an adverse employment action. Accordingly, the suspension of Plaintiff's contract is the only adverse employment action properly alleged in the Complaint.

## C. Substantial and motivating factor

Finally, Defendant contends that, to the extent that an adverse action exists, Plaintiff's termination was not motivated, even in part, by her speech. Defendant writes:

> Most significantly, the pleadings demonstrate that the Board suspended Plaintiff's contract as part of an economic reduction in force affecting the entire district. See Am. Answer, Doc. 18-1 (evidencing the same). Specifically, in the same resolution in which the Board suspended Plaintiff's contract the Board (1) closed an elementary school "to reduce expenses due to the critical financial situation of schools of the State of Ohio" (Am. Answer, Doc. 18-1, Page ID# 132); [*24] (2) suspended the contracts of eight teachers (Am. Answer, Doc. 18-1, Page ID# 134-5); (3) suspended the contracts, in whole or part, of three other Head Start employees (Am. Answer, Doc. 18-1, Page ID# 135-6); and (4) abolished 12 employment positions for financial reasons (Am. Answer, Doc. 18-1, Page ID# 136-7).
>
> Moreover, the suspension of Plaintiff's contract, and the other three Head Start employees, occurred only after consultation with the grantee agency for the Head Start program and the "Parent/Policy Committee." Am. Answer, Doc. 18-1, Page ID# 135. To the extent Plaintiff engaged in protected conduct, such conduct clearly did not motivate the Board's decision. To find otherwise would require the implausible presumption that the Board constructed an entire reduction in force, affecting multiple District personnel, in order to retaliate against Plaintiff.
>
> However, even if the Board did not suspend Plaintiff's contract during an economic reduction in force, judgment on the pleadings must still be granted as there are no plausible allegations in the Complaint that Plaintiff's speech activities motivated the Board's decision to suspend her contract. To be sure, while the Complaint [*25] alleges that "[t]he real reason for the Plaintiff's termination was that she made complaints in the public interest," these vague and conclusory allegations of nefarious

intent and motivation by the Board are not well-pled, and therefore insufficient to "plausibly suggest an entitlement to relief." *Iqbal, 129 S. Ct. at 1951*. While the Complaint contains factual allegations regarding the intent of Plaintiff's supervisor, it makes no plausible allegation regarding the Board's motivation to suspend her contract. See Compl. at ¶¶8-11, 13 (alleging the same).

ECF Dkt. #23 at p. 19-20. Defendant further contends that, because more than year elapsed between Plaintiff's last alleged protected activity (January of 2010) and Defendant's decision to suspend her contract (June 6, 2011), the motion for judgment on the pleadings should be granted.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. See *Harbin—Bey v. Rutter, 420 F.3d 571, 580 (6th Cir.2005)*. At the same time, "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983.'" *Id.* quoting *Gutierrez v. Lynch, 826 F.2d 1534, 1538-39 (6th Cir.1987))*.

The [*26] Sixth Circuit analyzed a 12(b)(6) challenge to the "substantial or motivating factor" prong of the *First Amendment* retaliation inquiry in *Handy-Clay, supra.* The Court first acknowledged that the phrase "motivating factor" has been interpreted to mean "one without which the action being challenged simply would not have been taken." *Handy-Clay, 695 F.3d 531, [WL] at 11* (citing *Holzemer v. City of Memphis, 621 F.3d 512, 525 (6th Cir.2010)*. The Court further acknowledged that "[a] defendant's motivation for taking action against the plaintiff is usually a matter best suited for the jury." *Handy-Clay, 695 F.3d 531, [WL] at 11* (citing *Paige v. Coyner, 614 F.3d 273, 282 (6th Cir.2010))*. However, in both *Handy-Clay* and *Paige*, the Sixth Circuit was able to identify allegations in the respective complaints that would allow a jury to find that the defendants in those cases were motivated, at least in part, by a retaliatory motive. The same is not true here.

In retaliation cases, a causal connection is shown through direct evidence or through knowledge coupled with a closeness in time that creates an inference of causation. *Nguyen v. Cleveland, 229 F.3d 559, 566 (6th Cir.2000)*. Close temporal proximity between the employer's knowledge [*27] of the protected activity and the adverse employment action alone may be significant enough to constitute evidence of a causal connection — but only if the adverse employment action occurs "very close" in time after an employee learns of a protected activity. *Clark Cty. Sch. Dist. v. Breeden (2001), 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509*; *Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir.2008)*(employee was fired on the day his employer learned that he had filed an EEOC complaint). Otherwise, temporal proximity between the protected activity and the adverse employment action does not give rise to a finding of causal connection unless "coupled with other indicia of retaliatory conduct." *Dixon v. Gonzales, 481 F.3d 324, 333-334 (6th Cir.2007)*; *Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 737 (6th Cir.2006)*.

Here, Defendant voted to suspend Plaintiff's contract approximately a year and a half after her last allegedly protected act. The lapse in time between the protected activity and the adverse employment action is too attenuated to establish causation. See *Hamilton v. Starcom Mediavest Group, Inc., 522 F.3d 623, 629 (6th Cir.2008)* ("[P]roximity alone generally [*28] will not suffice where the adverse action occurs more than a few months-let alone nine months-after the protected conduct."); see also *Arendale v. City of Memphis, 519 F.3d 587, 606-607 (6th Cir.2008)*(two months between EEOC complaint and suspension insufficient, standing alone, to support causal connection); *Cooper v. City of North Olmsted, 795 F.2d 1265, 1272 (6th Cir.1986)* (four months between complaint and discharge insufficient, standing alone, to support inference of retaliation); *Little v. BP Exploration & Oil Co., 265 F.3d 357, 365 (6th Cir.2001)*(three month gap is too long to support an inference of causation). Furthermore, Plaintiff has not alleged any other indicia of retaliatory conduct on the part of Defendant. Without more, the chronology of events does not support an inference of causation, and, therefore, the

2012 U.S. Dist. LEXIS 157966, *28

undersigned recommends that the Court find that Plaintiff has failed to allege sufficient facts to establish that her alleged protected speech was a substantial or motivating factor in her termination.

## V. Conclusion

In summary, the undersigned recommends that the Court grant the motion for judgment on the pleadings, ECF Dkt. #23, as Plaintiff has failed to allege [*29] sufficient facts to fulfill the *Garcetti* requirement for her public employee *First Amendment* claim, and, in the alternative, that she has also failed to allege sufficient facts to demonstrate that her alleged protected speech was a substantial or motivating factor in her termination.

IT IS SO ORDERED.

SIGNED AND ENTERED on this 27th day of September, 2012.

*/s/ George J. Limbert*

GEORGE J. LIMBERT

UNITED STATES MAGISTRATE JUDGE

**End of Document**

EXHIBIT 2

**Dery, Brett**

| | |
|---|---|
| **From:** | Dery, Brett N |
| **Sent:** | Friday, March 13, 2020 4:55 PM |
| **To:** | Dery, Brett N (deryb@oakgov.com) |
| **Subject:** | FW: SCAO Biweekly Brief |
| **Attachments:** | LAO8-model.docx |

**Brett Dery**
**Court Administrator**
52-2 District Court
5850 Lorac Drive
Clarkston, MI 48346
248-625-4999

**From:** Stacey Rautio [mailto:RautioS@courts.mi.gov]
**Sent:** Friday, February 28, 2020 10:17 AM
**To:** Julie Bovenschen (julie.bovenschen@macombgov.org) <julie.bovenschen@macombgov.org>; Oeffner, Kevin M
<oeffnerk@oakgov.com>; Lori Curtiss (lcurtiss@lapeercounty.org) <lcurtiss@lapeercounty.org>; Michael McMillan
(mmcmillan@stclaircounty.org) <mmcmillan@stclaircounty.org>; Black, Alexandra L <blacka@oakgov.com>; Luce, Amy L
<lucea@oakgov.com>; Andrea Strassburg (StrassburgA@40thDistrictCourt.org) <StrassburgA@40thDistrictCourt.org>;
Annette Gattari-Ross (agattariross@37thdistrictcourt.org) <agattariross@37thdistrictcourt.org>; Dery, Brett N
<deryb@oakgov.com>; O'Neal, Dana <oneald@oakgov.com>; David L. Walsh (dwalsh@fhgov.com)
<dwalsh@fhgov.com>; Diana M. Nimmor (dnimmoor@hazelpark43rdcourt.com)
<dnimmoor@hazelpark43rdcourt.com>; James McGrail (j.mcgrail@41BCourt-Mi.US) <j.mcgrail@41BCourt-Mi.US>; Jen
Thom (JThom@waterfordmi.gov) <JThom@waterfordmi.gov>; Jim VerPloeg (jverploeg@shelbytwp.org)
<jverploeg@shelbytwp.org>; Karen Haydett (khaydett@eastpointecity.org) <khaydett@eastpointecity.org>; Linda
Carroll (lcarroll43dc@ferndalecourt.com) <lcarroll43dc@ferndalecourt.com>; Linda Girard (lgirard@stclaircounty.org)
<lgirard@stclaircounty.org>; Lynette Ward (lward@pontiac.mi.us) <lward@pontiac.mi.us>; Marlisa Beauchemin
(marlisa.beauchemin@macombgov.org) <marlisa.beauchemin@macombgov.org>; Melissa King Shannon
(mking@roseville-mi.gov) <IMCEAEX-
_o=FirstOrganization_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=4eab5
6f41de54751883e63a09d2b3fed-mking+40@courts.mi.gov>; Michael Piatek (mpiatek@sterling-heights.net)
<mpiatek@sterling-heights.net>; Nancy Waldman (waldmann@45bdc.org) <waldmann@45bdc.org>; Renee Shelide
(rshelide1@cityofsouthfield.com) <rshelide1@cityofsouthfield.com>; Sandy Kegler (sandy.kegler@macombgov.org)
<sandy.kegler@macombgov.org>; Sharon Arseneault (sla43rdhp@aol.com) <sla43rdhp@aol.com>; Tami Bone'
(BoneT@romi.gov) <BoneT@romi.gov>; Andruccioli, Barbara P <andruccioliib@oakgov.com>; Hutton III, Edward A
<huttone@oakgov.com>; John Brennan (john.brennan@macombgov.org) <john.brennan@macombgov.org>; Joseph
Schulte (jschulte@stclaircounty.org) <jschulte@stclaircounty.org>; Maureen Flanigan Salayko
(msalayko@lapeercounty.org) <msalayko@lapeercounty.org>
**Subject:** FW: SCAO Biweekly Brief

Good morning, everyone --

I'm forwarding the current Bi-Weekly Briefs as a reminder that a new LAO will need to be submitted in regards to the
allowance of electronic devices in courthouses and courtrooms. The due date is *May 1, 2020* for approval so if you could
submit the new LAO no later than *April 24, 2020*, I would appreciate it. That way, I can make sure that everyone's LAO is
approved in time.

1

I've also attached the new model for your convenience.

*Stacey Rautio*
**Regional Management Assistant**
Michigan Supreme Court | State Court Administrative Office | Region VI
313-972-3304 phone | 313-972-3309 fax | RautioS@courts.mi.gov | courts.mi.gov

*This message has been prepared on computer equipment and resources owned by the Michigan Supreme Court. It is subject to the terms and conditions of the Court's Computer Acceptable Use Policy.*

**From:** State Court Administrative Office <SCAOMail@courts.mi.gov>
**Sent:** Thursday, February 27, 2020 2:59 PM
**To:** Courts <Courts@courts.mi.gov>
**Subject:** SCAO Biweekly Brief



# SCAO BIWEEKLY BRIEF
Required Information for Michigan Trial Courts

## E-MEMORANDUM

Date:   February 27. 2020

To:     All Judges
cc:     Court Administrators, Clerks, and Registers

From:   Milton L. Mack, Jr. State Court Administrator

Re:     SCAO Biweekly Brief

Please click the links below to see information posted since our last SCAO Biweekly Brief.

<u>General and Administrative Matters</u>

- Amended MCR 8.115, effective May 1, 2020, permits electronic devices in courthouses and courtrooms. This affects Model LAO 8, and will require courts to resubmit their LAO to SCAO for approval no later than May 1, 2020.

- State Bar of Michigan: Notice of Suspension for Non-Payment of Fees.

- The State Bar of Michigan is offering a free poster that includes contact information for lawyers facing ethical and mental health issues.

<u>MiFILE (Statewide e-Filing Initiative)</u>

<u>Education</u>

- Save the Date – Child Welfare Services Division presents: Understanding and Supporting the Infant-Parent Relationship Affected by Substance Use, a web-based meeting, May 18.

- MJI Seminar:  Regional Judicial Seminar, May 6, at the Inn at St. John's Plymouth.

- High school students can argue a case as if before the Supreme Court, at Exploring Careers in the Law, a program offered by the Michigan Supreme Court Learning Center, July 20-24, at the Michigan Hall of Justice, Lansing.

- MJI Seminar:  Basic Interviewing, Counseling, and Communication Techniques Seminar, April 22-24, at the Ralph A. MacMullen Conference Center, Higgins Lake.

- MPJRA Conference:  2nd Annual Adoption One-Day Conference, April 24, Mt. Pleasant Comfort Inn.

- JIS Webinar:  Abstract Reports, March 11.

Reports and Publications

Forms

Family/Probate

Civil (including non-traffic civil infractions)

- Written business court opinions must be submitted to a SCAO in accordance with these revised standards and by attaching new form SCAO 79.

Criminal/Traffic

- See FAQs for how to process orders for destruction of arrest records, biometric data, and DNA.

- MDOS offers updated Court Manual and Abstract Training Manuals on a new extranet portal.

Court Rules

Job Postings

Attorney Discipline Board: Recent Notices of Discipline and Reinstatement

Attorney Discipline Board: Recent Board Orders and Opinions

The **SCAO Biweekly Brief** is issued every other Thursday and contains all of the latest updates and "Recent Communications" you are used to receiving from SCAO. (REMINDER: Trial court judges, administrators, and other court staff *must* receive this information in order to remain up-to-date on news, announcements, and other important messages that will not be issued elsewhere.)

**YOU DON'T HAVE TO WAIT FOR THE E-MAIL!**
SCAO updates our "Recent Communications" **webpage** regularly. To keep up on this information on a real-time basis, you can set this **webpage** as your default homepage. Also, you can add an RSS feed so you'll be notified instantly regarding any changes on the page. (To set up an RSS feed, check with your IT department regarding specific policies and then click the button on the webpage.)

In addition, announcements will be posted to social media as they become available, so please follow the Michigan Supreme Court (SCAO) on **Twitter**, **Facebook**, and **LinkedIn**.

**TIPS TO ENSURE DELIVERY TO YOUR IN BOX:**
We do our best to make our messages as "friendly" as possible to your in-box. However, sometimes e-mail service providers have spam filters that divert important communications into a spam folder because they fail to recognize the sender, meaning that some subscribers do not receive these important messages. To ensure that you receive SCAO e-mails, please add SCAO's "From" e-mail address to your e-mail's address book or contact list. (For detailed instructions

3

and assistance with this, visit **www.firemailing.com/whitelist.html**.) Also, please note that "unsubscribing" from any one type of SCAO e-mail will remove you from *all* of our communications.

Lisa Harris | Administrative Assistant | SCAO-Trial Court Services | 517-373-2219

Find Trial Court Services resources

*This message has been prepared on computer equipment and resources owned by the Michigan Supreme Court. It is subject to the terms and conditions of the Court's Computer Acceptable Use Policy.*

We cannot become what we want to be by remaining what we are. ~Max DePree

State Court Administrative Office
Model Local Administrative Order 8 – Access, Inspection,
Reproduction, and Creation of Court Records                    (rev. 5/20)

[LOCAL COURT LETTERHEAD]

Administrative Order [year] - [number]

## ACCESS, INSPECTION, REPRODUCTION, AND CREATION OF COURT RECORDS

**IT IS ORDERED:**

This administrative order is issued in accordance with Michigan Court Rules 8.119(H) and 8.110(C)(8). The purpose of this order is to regulate requests for access, inspection, and reproduction of public court case records and to allow flexibility in providing approved court forms or creating new case records.

The clerk may not permit any case record to be taken from the court without the order of the court. The court may provide access to the public information in a register of actions through a publicly accessible website; however, all other public information in its case records may be provided through electronic means only upon request.

1. Court records addressed by this administrative order include:

   a) Records Kept by the Clerk of the Court. This includes case files, registers of action, numerical and alphabetical indexes, and calendars. MCR 8.119(D).

   b) Court Recordings, Log Notes, Jury Seating Charts, and Other Media. This includes video/audio/digital court recordings, notes, tapes, logs, backup tapes, discs, and any other medium used or created in the making of a record of proceedings and kept pursuant to MCR 8.108. MCR 8.119(F).

2. Procedures for accessing, inspecting, and reproducing nonpublic information and records are set forth in Component 19 of the Michigan Trial Court Records Management Standards, chart of Nonpublic and Limited-Access Court Records, Local Administrative Order 1 (friend of the court records), and Administrative Order 2006-2, Privacy Policy and Access to Records.

3. A list of court records, including those defined in MCR 8.119(E), that are not subject to public access and inspection is contained in the chart of Nonpublic and Limited-Access Court Records.

4. Court records are not subject to Freedom of Information Act requests. MCL 15.232(h)(iv) specifically exempts the judiciary from the Freedom of Information Act.

5. In accordance with MCR 8.110(C)(8), the court shall provide litigants with forms approved by the state court administrator at the cost of $[insert amount] per form. *[Select an amount no less than $.25 and no more than $1.00.]*

a) Parties will be limited to a maximum of [insert number] copies per each type of form requested.

b) There will be no charge for forms requested by court-appointed attorneys on cases to which they have been appointed or for indigent parties.

c) There will be no charge for forms prepared by the court.

d) The circuit court or clerk of the court may not charge a fee for pro se forms for personal protection proceedings or motion forms for criminal postappeal relief.  MCL 600.2950, 600.2950a, MCR 6.502(C).

6.  Any person may access and inspect, at no charge, any case record or information contained in those records, regardless of means of access and record format, unless access is restricted by statute, court rule, or a court order entered pursuant to MCR 8.119(I), and may make photographic copies in accordance with MCR 8.115(C)(5)(a) or obtain copies subject to the following regulations established in accordance with MCR 8.119(J).

a) General

i) All requests to access and inspect case records identified in this administrative order and/or for copies of those records must be made [insert court's procedure for requesting records or copies].

ii) Persons who do not have a complete case number or party names may review available case indexes to identify and select specific cases for inspection.

iii) Case records shall be reviewed at the public counter unless, in the discretion of court supervisory personnel, approval is granted to review records in the clerk's office based on available space, the type and number of records to be reviewed, and the length of time necessary to review them.

iv) Ensuring the right of immediate access to and public inspection of court records shall be a top priority, but may be limited by the availability of court staff to supervise the inspection.

b) Access

i) Except for online public case indexes and registers of case action, requests for access and inspection to no more than [insert number] specific case files will be accommodated within [insert amount of time] unless the files are not in the active file area.  Requests for specific case records in storage will be accommodated within [insert a number up to a maximum of 10] business days.

ii) Requests for access and inspection to more than [insert number] specific case files will be accommodated within a reasonable amount of time, depending on the total number of case files requested and the availability of court staff.

iii) Case information requests from other courts that lack specific case numbers or party names shall be researched by this court. Requested information will be provided at no charge.

iv) Requests to perform general traffic or criminal record checks that do not have specific case numbers or party names will not be researched by the court. They will be referred to the appropriate state agencies to obtain this information or to the available indexes referred to under subsection 6(a)(ii).

v) Requests for the wholesale review of particular types of case records will only be considered when, in the court's discretion, the request will not unreasonably interfere with the discharge of court functions. With these types of requests, the court may specify the date, time, and manner in which access is to be granted. It will be the responsibility of those persons requesting access to make prior, acceptable arrangements with the court.

c) Copies

i) The court will provide copies of case file documents ([insert number] or fewer total pages) at a cost of $[insert per page cost] [select an amount no less than $.25 and no more than $2.00] within [insert amount of time, e.g., 1 hour] of the request for copies, except that copies of transcripts filed with the court shall not exceed $.30 per page pursuant to MCL 600.2543.

ii) Attorneys, parties, and members of the public may use a portable electronic device to reproduce public court documents in a clerk's office as long as the device leaves no mark or impression on the document and does not unreasonably interfere with the operation of the clerk's office. [Identify any additional guidelines, policies, or restrictions not inconsistent with MCR 8.115(C)(5)(a)]

iii) Requests for more than [insert number] total copies of case file documents will be accommodated within a reasonable amount of time as determined by the (1) total number of pages to be copied, (2) availability of court staff and photocopying equipment, and (3) nature of the request, such as the degree to which court staff is required to identify, select, and review documents to be copied.

iv) In order to preserve and maintain the integrity of court records and to prevent unreasonable interference with the discharge of court functions, persons will not be permitted to copy or otherwise duplicate court records using their own equipment, other than a portable electronic device defined in MCR 8.115(C)(2)(a).

d) New Record Creation

i) Requests for creation of a new record, as defined in MCR 8.119(J)(5), will be granted only if creating the new record will not unreasonably interfere with the discharge of court functions. If granted, the request will be accommodated within a reasonable amount of time dependent upon the availability of sufficient public data within the body of case records (including related databases), and the ease with which those records can be identified and compiled.

ii) Costs to provide a new record may not exceed the actual cost of labor and supplies and the actual use of the system to develop, generate, and validate the accuracy of the record.

7. Access to court recordings, log notes, jury seating charts, and other media of court proceedings made pursuant to MCR 8.108 *[select one]* [is permitted in accordance with this order] [is not permitted].

*[If the court provides access to audio or video recordings, log notes, tapes, discs, or any other medium used or created in the making of a record of proceedings and kept pursuant to MCR 8.108, outline the procedure for requesting access, including the amount of time to retrieve and make the recording available, e.g., 24 hours, and any restrictions regarding to whom access to an audio or video recording is limited (e.g. parties in the case), viewing location, etc.]*

8. Copies of court recordings, log notes, jury seating charts, and other media of court proceedings made pursuant to MCR 8.108 *[select one]* [are not available] [are available as provided by this order for $(insert per DVD cost) *[select an amount no less than $2.00 and no more than $20.00]* per DVD for recordings and other media in electronic format and $(insert per page cost) *[select an amount no less than $.25 and no more than $2.00]* per page for log notes and jury seating charts if available only in paper].

*[If the court provides copies of audio or video recordings, log notes, tapes, discs, or any other medium used or created in the making of a record of proceedings and kept pursuant to MCR 8.108, outline the procedure for requesting copies, including the amount of time to retrieve and make a copy of the recording (e.g., 24 hours), any restrictions regarding to whom a copy of an audio or video recording is limited (e.g. parties in the case), and restrictions on use of the copy (e.g. no duplication, publishing, or altering).]*

Effective Date:

Date:                                    Chief Judge Signature:

_____          _____

<u>**[insert court name and number] COURT**</u>
<u>**MEMORANDUM**</u>

**<u>TO:</u>**        Persons Requesting General Record Checks

**<u>FROM:</u>**    [insert name], Court Administrator

Please be advised that per [insert court name and number] Court Local Administrative Order [insert order number], a specific case number or the party names are required in order to provide the information you have requested.

If you do not have a specific case number or case name, the following options are available:

1.    You may review available case indexes at the [insert court name and number] Court to identify and select specific cases for inspection. Please note that this review may only provide information on current or recent cases from this court.

2.    A more complete record check may be requested by writing the appropriate state agency. Both the Michigan State Police and Department of State maintain computer information expressly for this purpose.

    (a)    To obtain a <u>Criminal</u> Record Check either contact the Michigan State Police Central Records Division at 517-241-0606 or go to the Michigan State Police Website at www.michigan.gov/ichat to obtain information on how to use the Internet Criminal History Access Tool (ICHAT).

    (b)    To obtain a <u>Driving</u> (Traffic) Record contact the:

        Michigan Department of State
        Commercial Look-up Unit
        7064 Crowner Drive
        Lansing, Michigan 48918
        Telephone: 517-322-1624

Once you receive complete record checks, you will be able to contact the appropriate police agency or court listed on the records to obtain case-specific information.

The [insert court name and number] Court regrets that it cannot reasonably accommodate your request at this time. If you have any additional questions, please contact the court at [insert contact information].