UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANA O'NEAL,

    Plaintiff,

v.

52ND DISTRICT
COURT and JUDGE
JOSEPH G.
FABRIZIO, in his
personal and official
capacity,

    Defendants.
_____/

Case No. 22-10470
Honorable Victoria A. Roberts

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS [ECF No. 12].

### I. INTRODUCTION

Dana O'Neal brings this suit against the 52nd District Court and Judge Joseph G. Fabrizio in his personal and official capacity ("Defendants"). O'Neal alleges that Defendants illegally retaliated against her in violation of the First Amendment and the Michigan Whistleblower Protection Act by firing her for voicing concerns about a 52nd District Court judge's impropriety. Defendants moved to dismiss, arguing that O'Neal failed to make out a case for retaliation in her complaint.

Because O'Neal concedes that her claim against Fabrizio in his official

1

capacity is improper, the Court **DISMISSES** that claim.

As for the other claims, the Court is persuaded that O'Neal stated plausible claims for relief on the face of her complaint. Additionally, Defendants' motion to dismiss relies primarily on summary judgment cases—the incorrect legal standard at this motion to dismiss stage. The Court **DENIES** Defendants' motion.

## II.     FACTUAL BACKGROUND

Dana O'Neal is a former Court Administrator of the 52-4 District Court in Oakland County, Michigan (i.e., the fourth division of the Oakland County District Court). She says that Defendants fired her for speaking out against professional misconduct of Kirsten Hartig, a judge of the 52nd District Court.

The 52-4 District Court has two judges: Judge Hartig and Judge Maureen McGinnis. In April 2018, Defendants hired O'Neal as the Court Administrator after being vetted by Fabrizio, Chief Judge of the 52-2 District Court. As Court Administrator, O'Neal was "responsible for the administrative and non-judicial functions of one division of the 52nd District Court involving the management of case processing, personnel, budget, juries, facilities, security and other non-judicial functions," amongst other things. [ECF No. 9, PageID.104].

During O'Neal's roughly four-year tenure, she says that Judge Hartig

openly mistreated her, other court personnel, and members of the public. O'Neal kept notes on Judge Hartig's conduct which she stored in her office. O'Neal says that some acts of impropriety include Judge Hartig berating her for using the restroom, accusing her of mismanaging grant funding, and publicly humiliating her in open court.

In September 2018, O'Neal says that she informed Judge Fabrizio about Judge Hartig's mistreatment of her.

In March 2020, O'Neal says that she emailed Fabrizio detailed examples of Judge Hartig's mistreatment of her. Fabrizio referred O'Neal to Human Resources, which launched an internal investigation. After Human Resources concluded that Judge Hartig's behavior fostered a hostile work environment, it recommended that Fabrizio submit a request for investigation to the Michigan Judicial Tenure Commission ("JTC"). The JTC is responsible for investigating allegations of judicial misconduct. O'Neal provided the JTC with names of individuals to be interviewed for the investigation.

On June 5, 2020, Fabrizio issued an executive order that prohibited members of the public from accessing court recordings and other media associated with court proceedings. This included access to Judge Hartig's alleged in-court misconduct.

In early 2021, O'Neal says that Fabrizio began distancing himself from

her. He instructed another court administrator to call O'Neal and tell her to stop contacting him because he did not know "why or how to assist" her. [ECF No. 9, PageID.106].

On June 8, 2021, a resident of Oakland County appeared before the Oakland County Board of Commissioners Public Health and Safety Committee, saying that "[t]here has been a pattern of abuse from [the 52nd District Court] for years," and that "it is well known in the legal community." [ECF No. 9, PageID.109]. She went on:

> However, it is not well known among the general public who votes for these judges and pays for these courts because of judicial orders in place that are designed to prevent the public from accessing copies of audio and video files that would let them see and hear for themselves what's been going on for years.

[ECF No. 9, PageID.109].

On September 13, 2021, O'Neal was called to a meeting with Fabrizio. He asked her whether someone within the court was contacting potential candidates to tell them "how bad it was" working for the 52nd District Court. [ECF No. 9, PageID.107].

On December 10, 2021, Defendants terminated O'Neal without providing a reason. O'Neal says that she never had a formal negative performance evaluation. Nor had she been placed on a corrective action plan or in an employee assistance program—all customary before termination.

Law enforcement escorted O'Neal off court premises without her belongings. She says that Defendants placed some of her property outside of the courthouse for her to pick up, but that her notes on Judge Hartig's conduct and the investigations were missing. The notes were returned to O'Neal on January 31, 2022.

O'Neal alleges that her protected speech concerning Judge Hartig's conduct and subsequent involvement in the JTC investigation was a substantial or motivating factor in Defendants' decision to fire her. Now before the Court is Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss O'Neal's complaint for failure to state a claim.

### III.   LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim

is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). This standard does not "impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

Dismissal under Rule 12(b)(6) is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Zaluski v. United Am. Healthcare Corp*., 527 F.3d 564, 570 (6th Cir. 2008).

Because a motion to dismiss challenges the sufficiency of the pleadings, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). The court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein," while discarding mere conclusory statements. *Adkisson v. Jacobs Eng'g Grp., Inc.,* 790 F.3d 641, 647 (6th Cir. 2015); *see Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555).

## IV. ANALYSIS

In their motion to dismiss, Defendants rely primarily on cases decided

at the summary judgment stage. This is improper. The parties in the cases relied on by Defendants had engaged in fact discovery and developed the record. That is not the case here. Defendants cannot attempt to litigate the merits of the case without giving O'Neal the opportunity to engage in discovery. At the 12(b)(6) stage, the only relevant inquiry is whether O'Neal stated a plausible claim for relief on the face of her complaint.

O'Neal's complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

The Court discusses O'Neal's First Amendment retaliation claim before turning to her claim under Michigan's Whistleblower Protection Act.

### A. O'Neal Plausibly States a Claim That Defendants Retaliated Against Her for Engaging in Protected Speech.

A First Amendment retaliation claim requires a plaintiff to demonstrate: (1) she was engaged in constitutionally protected activity; (2) the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006).

There is no probability requirement at the pleading stage that O'Neal's claims will succeed. Rather, all O'Neal had to do was set forth enough facts

7

to raise a reasonable expectation that discovery will reveal evidence of illegal conduct. *Twombly*, 550 U.S. at 556.

O'Neal sufficiently made out a claim for First Amendment retaliation. The complaint addressed each element.

**1. O'Neal alleges sufficient facts to support that she was engaged in constitutionally protected activity.**

For a public employee's speech to be a "constitutionally protected activity" under the first prong of First Amendment retaliation, she must show that (1) her speech addressed a matter of public concern; (2) she spoke as a private citizen, not a public employee; and (3) her interest as a citizen in speaking on the matter outweighed the state's interest, as an employer, in promoting the efficiency of the public services it performs. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 540 (6th Cir. 2012).

> i. *O'Neal alleges sufficient facts to support that her speech addressed a matter of public concern.*

To support a claim for retaliation under the First Amendment, a public employee must first establish that her speech addressed a matter of public concern. *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1050 (6th Cir. 2001). Here, the key question is not whether a person is speaking in her role as an employee or a citizen, but whether the employee's speech in fact touches on matters of public concern. *Id.* at 1050-51 (6th Cir. 2001). In other words, even if a public employee speaks in her role as a public employee

8

and that speech is not communicated to the public, the First Amendment protects the speech so long as it touches on a matter of public concern. *Charvat v. E. Ohio Reg'l Wastewater Auth.*, 246 F.3d 607, 617 (6th Cir. 2001).

O'Neal's complaint contains multiple allegations to support that her speech addresses a matter of public concern. She says that:

- Judge Hartig is an elected official, so news of her misconduct affects the public and their choice whether to vote for her [ECF No. 9, PageID.98, .109];
- Public tax dollars help pay for the JTC investigation (and O'Neal's speech catalyzed the investigation) [ECF No. 9, PageID.105];
- O'Neal's speech erodes public trust in the judiciary [ECF No. 9, PageID.105]; and
- Topics in the JTC investigation went beyond how just O'Neal was treated—the JTC interviewed 40-60 people consisting of county employees, local law enforcement, and local attorneys [ECF No. 9, PageID.106].

These allegations, viewed in a light most favorable to O'Neal, are enough to support that her speech involved a matter of public concern.

Defendants argue that O'Neal's speech is not of public concern because it is merely a "run-of-the-mill" employment dispute. This is unpersuasive. O'Neal's speech is not a simple employment dispute—she alleges that her speech regarding Judge Hartig impacts voters and their right to make an informed vote. For this reason, O'Neal satisfies the "public concern" prong at the 12(b)(6) stage.

9

> ii. *O'Neal alleges sufficient facts to support that she spoke as a private citizen, not a public employee.*

When a public employee makes a statement pursuant to her official duties, the employee is not speaking as a citizen for First Amendment purposes. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). To state a claim, O'Neal was required to allege sufficient facts to show that she did not speak pursuant to her official duties as a public employee.

Allegations O'Neal provided in her complaint to support the "private citizen" prong include that:

- O'Neal's job description and essential functions do not involve the responsibility to curtail a judge's behavior [ECF No. 9, PageID.105];
- Her job description is facially void of any reference to "investigate," "report," or "discipline of employees" [ECF No. 9, PageID.105];
- Her position as Court Administrator inherently lacks authority to investigate or discipline an elected judge for alleged misconduct [ECF No. 9, PageID.105];
- Her speech cannot be attributed to the ordinary scope of her duties as Court Administrator when considering the reasons for the speech, setting of the speech, the speech's audience, and the general subject matter [ECF No. 9, PageID.105]; and
- Her speech was outside the chain of command [ECF No. 9, PageID.105-06].

O'Neal alleged sufficient facts to satisfy the private citizen prong.

Defendants argue that O'Neal's complaint only establishes that she spoke as an employee, not a public citizen. They say that her job description

10

contemplates reporting on a judge's potential misconduct. The general summary of O'Neal's job description states that:

> Under general direction, [O'Neal] is responsible for the administrative and non-judicial functions of one division of the 52nd District Court involving the management of case processing, personnel, budget, juries, facilities, security and other non-judicial functions. Directs the processing of traffic, civil, criminal and probation case flow. Reviews and implements new court rules, statues, administrative orders and laws affecting case processing, technical and personnel matters. Utilizes current county-wide and/or department specific software to complete assignments.

[ECF No. 9, PageID.104].

The Court cannot say at this stage whether O'Neal acted within or outside her duties as a public employee. O'Neal's job description, on its face, is not definitive enough to warrant ruling against her before she even has the opportunity to engage in discovery. Further, the primary cases Defendants use to argue that O'Neal acted as a public employee were decided on summary judgment, which employs the incorrect legal standard for 12(b)(6) purposes.

Because fact discovery is necessary to develop the record, Defendants' argument that O'Neal fails the private citizen prong cannot stand.

11

> iii. *O'Neal alleges sufficient facts to support that her interest as a citizen in speaking on the matter outweighed the state's interest.*

Defendants do not address the final prong of public employee speech in their briefing. But even if they did, O'Neal alleges that her speech "had no impact on the efficiency of the Court," and therefore Defendants had no interest in curtailing it [ECF No. 9, PageID.113]. This is sufficient to support that O'Neal's interest as a citizen in speaking on Hartig's alleged misconduct outweighs the court's interest in promoting the efficiency of the judiciary. Indeed, encouraging speech on potential judicial misconduct would promote the efficiency of the court, not impede it.

**2. O'Neal alleges sufficient facts to support that Defendants' adverse action caused her to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity.**

Defendants do not address the second prong of First Amendment retaliation. Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived; it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones. *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir.1997).

**3. O'Neal alleges sufficient facts to support that Defendants' adverse action was motivated by her speech.**

To show a causal connection between a plaintiff's protected conduct

and the defendant's adverse action, the plaintiff must establish that her protected conduct was a motivating factor behind the adverse action. *Marie v. Am. Red Cross*, 771 F.3d 344, 360 (6th Cir. 2014).

In her complaint, O'Neal says that during her entire tenure working for Defendants, they never indicated that her performance fell below expectations before abruptly firing her. She states, "[t]here was no formal negative performance evaluation, corrective action, employee assistance program—all of which are customary prior to termination." [ECF No. 9, PageID.110]. Additionally, she provides the following chronology of events:

- In September 2018, O'Neal informed Judge Fabrizio about Judge Hartig's mistreatment of her in open court [ECF No. 9, PageID.101];

- In March 2020, O'Neal emailed Fabrizio detailed examples of Hartig's misconduct [ECF No. 9, PageID.101];

- On June 5, 2020, Fabrizio issued an order cutting off public access to court records (which included access to Judge Hartig's in-court alleged misconduct) [ECF No. 9, PageID.103];

- In early 2021, Fabrizio "began to distance himself" from O'Neal, telling her through a third party to stop contacting him because "he did not know why or how to assist her" [ECF No. 9, PageID.106];

- On June 8, 2021, an Oakland County resident informed the Oakland County Board of Commissioners Public Health and Safety Committee that "there has been a pattern of abuse from the 52nd District Court for years" [ECF No. 9, PageID.109];

- On September 13, 2021, Fabrizio called O'Neal into a meeting to question her as to whether someone in the court was contacting

- potential candidates to tell them how bad it was working for the court [ECF No. 9, PageID.107];

- On December 10, 2021, Defendants fired O'Neal without a given reason [ECF No. 9, PageID.109]; and

- On the same day, Defendants placed some of O'Neal's property outside of the courthouse for her to pick up, but "the notes stored in her office detailing Judge Hartig's behavior and the investigations were missing." [ECF No. 9, PageID.110]. The notes were returned to her a month later.

Temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 718 (6th Cir. 2007). But temporal proximity may establish a causal connection between protected activity and an adverse employment action when coupled with evidence of retaliatory conduct. *Id.*

O'Neal provided enough facts in her complaint to satisfy the third and final element of First Amendment retaliation. Rather than just provide evidence of temporal proximity, she couples that with evidence that her notes on Judge Hartig's conduct were not returned to her for weeks, as well as the fact that Defendants never indicated that her performance fell below expectations at any point before firing her. The Court is satisfied that O'Neal establishes the causal connection element of retaliation at this stage.

O'Neal successfully states a claim for First Amendment retaliation in her complaint.

### B. O'Neal Plausibly States a Claim That Defendants Violated the Michigan Whistleblower Protection Act.

To establish a prima facie case under Michigan's Whistleblower Protection Act, a plaintiff must show that: (1) she engaged in protected activity; (2) defendants discharged her; and (3) a causal connection exists between the protected activity and the discharge. MCL 15.362.

Because these elements mirror the elements of a First Amendment retaliation claim, the Court applies the same rationale to conclude that O'Neal plausibly stated a claim under the Michigan Whistleblower Protection Act.

A motion to dismiss should only be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle her to relief. *Zaluski*, 527 F.3d at 570. As discussed above, that is not the case here. Defendants improperly attempt to have the Court prematurely weigh the evidence presented, but it is well settled that "it is not the function of the court [in ruling on a motion to dismiss] to weigh evidence." *Miller*, 50 F.3d at 377. For this reason, Defendants' motion must be denied.

## V.     CONCLUSION

O'Neal states a plausible claim for relief under the First Amendment and Michigan Whistleblower Protection Act. The Court **DENIES** Defendants' motion to dismiss.

**ORDERED.**

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  November 4, 2022